## THILEMANN et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   April 17, 1903.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—DELAY—EXCUSES.

   Where a municipal contract provided that a deduction should be made for delays in the work, but contained no provision permitting an allowance for delays caused by the city, and a substantial part of the delay which ensued was attributable to the fault of the city, the latter was not entitled, as a matter of law, to deduct any sum as damages for overtime.

2. SAME—EXTRA WORK—ALLOWANCE FOR DELAY.

   Where a municipal contractor for the construction of a sewer was compelled to remove extra filling placed upon the line of his work by preceding grading contractors, the fact that an allowance was made by the city for delay necessitated by the removal of such filling was no defense to the contractor's right to recover for the extra work in removing the same.

3. SAME.

   A sewer contract provided that, should "postponement or delay" be occasioned by the precedence of other contracts on the line of the work, no claim for damages therefor should be made or allowed, nor for damages in consequence of the street not being "in the condition contemplated" at the time of making the contract, except that if the contractor was delayed thereby such allowance of time should be made as should be reasonable, and that incumbrances and obstructions should be removed by the contractor at his own expense, if so directed by the city engineer.   At the time the contract was made the street had not been graded, and the grading contractor who preceded plaintiff filled in the line of the sewer to a considerable depth, which filling plaintiff was required to excavate.   Held, that such filling was not in the nature of an "incumbrance or obstruction," nor "a change of condition," within the

contract, and that the city was therefore liable for extra work occasioned
in removing it.

**4. SAME—EXISTENCE OF ADJOINING SEWER—MISREPRESENTATIONS.**

At the time plaintiff contracted for the construction of a sewer an ad-
joining street, in which the plans and profiles indicated a sewer had been
constructed, had not been graded, and when plaintiff examined the ground
there was no evidence of any manholes. The contract originally required
the work to commence at "the existing sewer in" such street, but the
words "commence at" were stricken out. The contract also provided that
no claim for damages should be allowed in consequence of the "adjoining
sewer" not being in the condition contemplated, and that the contractor
should keep all the trenches free from water by the operation of pumps.
*Held*, that the fact that no sewer in fact existed in such adjoining street
by reason of which the contractor was deprived of the drainage which
such sewer would have afforded did not entitle him to recover for the
extra expense of pumping occasioned thereby.

**5. SAME—VERDICT—CONCLUSIVENESS.**

Where a city contractor claimed $869 for loss of profits on rock excava-
tions performed by another contractor, a verdict in the contractor's favor
for $600 was conclusive on appeal.

**6. SAME—HOURS OF LABOR—RESTRICTION.**

Where a contract for city work provided that the contractor should not
require of his laborers more than eight hours per day, he was not entitled
to recover damages from the city by reason of the fact that during a
part of the time the work was progressing the city required a compliance
with such provision.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Frederick Thilemann, Jr., and another against the city of
New York. From a judgment in favor of plaintiffs for less than the
relief demanded, and from an order denying a motion for a new trial
and for a reargument, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN,
O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellants.
Chase Mellen, for respondent.

O'BRIEN, J. The plaintiff seeks to recover upon five separate
causes of action based upon claims which arose in the course of his
performance of a contract entered into with the city of New York
whereby he agreed to construct a sewer in East 187th street and in
adjoining streets and avenues. For the work performed a certificate
was given to the plaintiff amounting in the aggregate to the sum of
$66,533.14, of which he was paid $63,372.67, the sum of $2,611.47 being
retained as repairing security, and the sum of $549 being deducted by
the city as damages for overtime. The plaintiff's first cause of action
is to recover this sum of $549, he claiming that it was wrongfully de-
ducted, and that the defendant had unlawfully delayed him. The con-
tract provided that the work should be completed within 350 days, ex-
clusive of Sundays and holidays and days excepted by the contract,
unless more time was required for certain additional work, when it
was to be extended proportionally; that the time was to be compared
with the aggregate time of inspectors, and not construed as con-
secutive days; and that the city might deduct as liquidated damages
for the noncompletion of the work the sum due for "inspector's wages

(four dollars a day) for each and every day the aggregate time of all the inspectors * * * may exceed the time stipulated." There was no provision in the contract for an allowance of time for delays occasioned by the act, omission, or fault of the defendant, nor that a certificate of such delays be given, but for unnecessary delay and nonperformance by the plaintiff the city was given the right to abrogate the contract.

The defendant's evidence, in the form of certificates and letters and testimony of those connected with the work, shows that the inspector's time was 978¾ days; that 139½ days were allowed for unsuitable weather, and that 352 days were allowed for delays occasioned by the city; leaving as overtime, above the 350 days stipulated in the contract, 137¼ days to be charged the contractor, which, at $4 a day, amounted to $549, the sum deducted. The evidence offered by the plaintiff was directed to showing that 510 instead of 352 days should be allowed for the delays occasioned and recognized by the city; and, moreover, that in addition the city was responsible for loss of time in the execution of the contract after the work was awarded, owing to questions which had arisen regarding the debt limit and other matters. It was further claimed by the plaintiff upon the trial that the computation made by the defendant and the view taken by the court were erroneous in confusing "inspector's days" and calendar days. The main insistence of the plaintiff, however, was that the first cause of action should not be submitted to the jury, but that the court should direct a verdict in his favor, and to the refusal of the court so to do an exception was taken. This exception is urged on our attention upon this appeal, and it is contended that, the prosecution of the work having concededly been hindered and delayed by the defendant's fault, this abrogated the time limit of 350 days prescribed in the contract, and no deduction should be made by the city, the plaintiff having performed the work within a reasonable time.

If this first cause of action was one properly submitted to the jury, then, upon the evidence adduced, their verdict in defendant's favor should not be disturbed. We think, however, that the plaintiff's contention that the conceded delays occasioned by the city abrogated the provision of the contract with respect to damages for overtime, and thereafter the contractor might complete within reasonable time, is correct. No provision of the contract permitted an allowance for delays by the city, and in the absence of such a provision it is inconsistent to hold the plaintiff for overtime in performing, and, on the other hand, compel him to allow delay on the part of the city. Dady v. Mayor, 57 Hun, 456, 10 N. Y. Supp. 819; Weeks v. Little, 89 N. Y. 566; Phelan v. Mayor, 119 N. Y. 86, 23 N. E. 175. In Dady v. Mayor, supra, it was said: "When the city caused any substantial delay in the work, it lost the right to charge the contractor with the stipulated liquidated damages for overtime, and could only insist that the time of completion should be reasonable." Here the city did not claim nor attempt to establish that there was any unreasonable delay by the contractor, but it stood upon its rights given by that provision of the contract which prescribed the time limit and damages. We think, therefore, that the city was not justified in deducting the sum

mentioned or any sum as damages for overtime, and that for the amount retained as such damages a verdict should have been directed in plaintiff's favor. It is unnecessary to discuss the subject of the proper manner of computing the overtime, in view of the conclusion at which we have thus arrived with respect to the first cause of action.

The second cause of action is to recover $1,836 for increased cost occasioned by the defendant permitting other contractors to place filling upon the line of his sewer construction, thus necessitating extra labor. That such extra work was performed is not disputed; but the defendant's claim is that the plaintiff was aware that the filling would be placed upon the avenues by those who preceded him, that the contract so indicated, and that the city, in any event, allowed him for the delay thereby occasioned.

Allowance merely for delay, however, would not compensate the plaintiff for the work performed in removing the filling. Nor do the terms of the contract referred to show that the city was not to be liable for extra work occasioned by its permitting others to place filling which it would be necessary for the plaintiff to remove. The particular provisions relied upon by the city in this respect state:

"It is further agreed that, should postponement or delay be occasioned by the precedence of other contracts on the line of the work which may be either let or executed before or after the execution of this contract, no claim for damages therefor shall be made or allowed, nor shall any claim for damages be made or allowed in consequence of the street or adjoining sewer not being in the condition contemplated by the parties at the time of making the contract, except that, if the contractor shall be delayed * * * by reason of the street or adjoining sewer not being in such condition, such allowance of time shall be made him as shall be deemed reasonable, * * * and incumbrances or obstructions which may be upon the line of the work when it is begun or may be thereafter placed there shall, if directed by the engineer, be removed by the contractor at his own expense."

The facts show that the contract was awarded the plaintiff in November, 1897, and executed October 26, 1898, for the construction of a sewer in and along various streets and avenues, including portions of Crotona avenue and Arthur avenue. On August 11, 1897, a contract was awarded by the city to Alfred P. Whitton for regulating and grading Crotona avenue, including that part thereof in which the plaintiff was to construct the sewer; and on March 10, 1898, a contract was awarded by the city to George Clarke for the regulating and grading of Arthur avenue, including that part thereof in which the plaintiff was to construct his sewer. Under their contracts with the city, the said Whitton and Clarke proceeded to regulate and grade the said avenues, and in so doing filled in for a considerable depth before the plaintiff had reached with his sewer those portions of the avenues. The work of these contractors was not begun when the plaintiff looked over the location, and when it was begun the plaintiff notified the city and objected to the filling in, for the reason that it would be necessary for him to excavate the same for his sewer. The exact amount of filling removed by the plaintiff was testified to by him, and the cost thereof, and the city does not dispute the sum named of $1,836. We think that the contract did not free the city from liability for work caused in the manner indicated. The filling in of the avenues by others to whom had been awarded contracts for regulating and grading

such avenues was not in the nature of an "incumbrance or obstruction" contemplated by the parties, nor was it a "change of condition" such as could have been contemplated. By its own act in permitting the other contractors to proceed with grading and regulating the very streets and avenues in which the plaintiff was directed to construct his sewer in accordance with the condition of the locality as it originally was, the city increased the plaintiff's work, and for the additional cost it should respond in damages. Although not obliged to wait until he had constructed his sewer in those avenues, it should, after directing against his protest such work to be done, reimburse him for the expense thereby entailed upon him. Rogers v. City, 71 App. Div. 618, 76 N. Y. Supp. 1029, affirmed, but not yet officially reported, Court of Appeals (66 N. E. 1115), February term. In the Rogers Case also a contractor for sewer work was obliged to remove filling placed on the line of his work by a contractor who preceded him in the avenue, and for the increased cost a verdict was directed in plaintiff's favor, and the judgment so entered was affirmed by this court and the Court of Appeals. Upon the authority of that case, therefore, the court here should, as the facts are not disputed, have directed a verdict in plaintiff's favor.

The third cause of action is to recover the sum of $13,306.63 for damages and increased cost occasioned by false representations of the city as to the existence of a sewer at the Southern Boulevard. The map submitted to the plaintiff by the city was put in evidence to show that such representation was made. One of the city's engineers testified that he was familiar with plans and profiles of sewer contracts, and with the meaning of the different marks and colors used, and that the two black lines upon the map turning around in Southern Boulevard (at the intersection with East 187th street) indicate work that has been finished at that point, and the figures indicate the size of the sewer; that he should consider that work as already constructed and the work to connect with it; that a proposed sewer would not be so indicated. Previous to this testimony the court had refused to permit a contractor to testify as to the meaning of the lines referred to upon the map, and exception was taken. The advertisements for the contract, it was shown, instructed bidders to visit the locality as well as to examine the maps and specifications, and the plaintiff personally went to the place, and saw no indications of manholes of the sewer, but, he says, concluded that, as the boulevard was not graded, the manholes were covered. As matter of fact, there was no sewer at the place indicated on the map. Had there been one available and serviceable to the plaintiff, it was testified that a drainage would have been established which would have avoided expensive pumping that was done, and for which the plaintiff asks damages. The contract stated that "the building of the sewer shall commence at Southern Boulevard as shown in the plan of work," but the city did not in fact direct the work to be commenced at that point. It further appears with respect to this provision of the contract that the words "existing sewer in" had originally followed the words "commence at the," and had been stricken out. The contract also, as before stated, stipulated that "no claim for damages shall be allowed in consequence of * * * the

adjoining sewer not being in the condition contemplated, * * *
except that, if the contractor shall be delayed * * * by reason
* * * of the adjoining sewer not being in such condition, such
allowance of time shall be made," etc.   Furthermore, the contract dis-
tinctly provides:

"The contractor at his own expense shall keep all the trenches * * *
free from water, and shall provide and keep in operation a steam pump or
pumps * * * when notified so to do. * * * The contractor shall at
his own expense pump out or otherwise remove any water which may be
found or shall accumulate in the trench, and shall form all dams or other
works necessary for keeping the excavation clear of water during the prog-
ress of the work."

We think, therefore, that the plaintiff failed to show that it was con-
templated by the parties and agreed that he should have the right and
privilege of using a sewer at the intersection of East 187th street and
the Southern Boulevard, even though the maps indicated that there
was a finished sewer at that point.   No harm was done the plaintiff
by the exclusion of the evidence which he offered as to the meaning
of the maps, because such evidence would merely have been cumula-
tive, the engineer for the city having testified that the maps did indi-
cate a finished sewer in the Southern Boulevard.   The contract con-
tains no provision that the plaintiff should have the right to use a
sewer at that or any other point for drainage, and no representation,
so far as the evidence shows, was made that there was a sewer properly
connected and leading to a place to which the drainage might flow.
From the fact that the Southern Boulevard was not graded, it would
seem that the plaintiff should have been apprised that no sewer was in
operation there.   The provision in the contract was that at his own
expense the contractor should provide a pump and keep the trench
clear of water.   And, apart from the question as to whether it was or
was not represented that a sewer was in Southern Boulevard, there
was neither contract nor representation by the city that the contractor
could use it or that it was fit and suitable for drainage.   In other
words, the city entered into no contract, express or implied, that it
would supply a sewer that would drain off the water, but, on the con-
trary, the contractor agreed to supply the necessary pumps and facili-
ties for that purpose.

It follows, in our opinion, that the plaintiff has no basis for claim-
ing damages for the cost of pumping, and the failure of the city to
supply him with a serviceable sewer for drainage, and that the trial
court properly dismissed the third cause of action, and the judgment
so entered should be affirmed.

It will be unnecessary to more than briefly refer to the fourth and
fifth causes of action.   The former related to loss of profits on rock
excavation, which work was performed by another contractor, and the
amount demanded was $869.   This claim was, upon the evidence, sub-
mitted to the jury, and their verdict in plaintiff's favor for the sum of
$600 is, we think, upon this subject, conclusive as to the rights of the
parties.

The fifth cause of action was for damages alleged to have been
sustained by the city's requiring, during a part of the time the work
was progressing, that the contractor should restrict his laborers to

eight hours a day. It appears that this was in accordance with the terms of his contract; and it follows that the plaintiff had no standing to recover for not being permitted, in violation of his agreement, to work more than eight hours a day. We think, therefore, that the trial court was right in dismissing this cause of action.

Our conclusions upon the whole case are that the judgment and order denying motion for new trial should be reversed, and a new trial ordered, with costs to appellant to abide event.

The appeal from the order denying motion for reargument should be dismissed, with $10 costs.

VAN BRUNT, P. J., McLAUGHLIN and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). I think the judgment should be affirmed.