FREDERICK THILEMANN, JR., and F. VINTON SMITH, Appellants, v.
THE CITY OF NEW YORK, Respondent.

*Contract imposing a payment of a per diem sum for any time, beyond that specified,
consumed in its performance — effect of a delay caused by the city — act of the city
in filling in a street where it had contracted for the construction of a sewer —
enforcement of a provision for an eight-hour day.*

Where a contract for the construction of a sewer in a public street in the city of
New York provides that the work shall be completed within a specified num-
ber of days and authorizes the city to deduct a certain sum for each day that
the work shall extend beyond the stipulated time, but contains no provision
for an allowance of time to the contractor because of delays occasioned by the
city, if such a delay occurs, the time limit specified in the contract becomes
abrogated, and the contractor is entitled to a reasonable time within which to
complete the contract.

Where the city permits persons, who had taken contracts to regulate and grade
the street in which the sewer was to be constructed, to deposit filling upon
the street after the sewer contractor had protested against such action on the
ground that it would be necessary for him to excavate such filling in order to
construct the sewer, the city is not relieved from liability to the sewer con-
tractor for the amount expended by him in excavating the filling thus depos-
ited by a provision in the sewer contract providing: " It is further agreed that
should *postponement* or *delay* be occasioned by the precedence of other contracts
on the line of the work which may be either let or executed before or after
the execution of this contract, no claim for damages therefor shall be made
or allowed, nor shall any claims for damages be made or allowed in conse-
quence of the street or adjoining sewer not being *in the condition contemplated*
by the parties at the time of making the contract except that if the contractor
shall be delayed * * * by reason of the street or adjoining sewer not being
in such condition, such allowance of time shall be made him as shall be
deemed reasonable. * * * Any *incumbrances* or *obstructions* which may be
upon the line of the work when it is begun or may thereafter be placed there,
shall if directed by the engineer be removed by the contractor at his own
expense."

The sewer contractor is not entitled to recover damages from the city because of
its refusal to permit him to violate a clause contained in the contract obliging
him not to permit his employees to work more than eight hours a day.

INGRAHAM, J., dissented.

APPEAL by the plaintiffs, Frederick Thilemann, Jr., and another,
from a judgment of the Supreme Court, entered in the office of the
clerk of the county of New York on the 29th day of April, 1902,
upon the dismissal of the complaint by direction of the court as to the
second, third and fifth causes of action, after a trial at the New York

Trial Term, and upon the verdict of a jury in favor of the defendant upon the first cause of action and in favor of the plaintiffs upon the fourth cause of action contained in plaintiffs' complaint; also from an order entered in said clerk's office on the 13th day of June, 1902, denying the plaintiffs' motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 26th day of May, 1902, denying the plaintiffs' motion for a reargument of the motion for a new trial.

*L. Laflin Kellogg,* for the appellants.

*Chase Mellen,* for the respondent.

O'BRIEN, J. :

The plaintiff seeks to recover upon five separate causes of action, based upon claims which arose in the course of his performance of a contract entered into with the city of New York, whereby he agreed to construct a sewer in East One Hundred and Eighty-seventh street and in adjoining streets and avenues.

For the work performed a certificate was given to the plaintiff, amounting in the aggregate to the sum of $66,533.14, of which he was paid $63,372.67, the sum of $2,611.47 being retained as repairing security, and the sum of $549 being deducted by the city as damages for overtime. The plaintiff's first cause of action is to recover this sum of $549, he claiming that it was wrongfully deducted and that the defendant had unlawfully delayed him. The contract provided that the work should be completed within 350 days, exclusive of Sundays and holidays and days excepted by the contract, unless more time was required for certain additional work, when it was to be extended proportionally; that the time was to be compared with the aggregate time of inspectors, and not construed as consecutive days, and that the city might deduct as liquidated damages for the non-completion of the work the sum due for "inspectors' wages (four dollars a day) for each and every day the aggregate time of all the inspectors  *  *  *  may exceed the time stipulated." There was no provision in the contract for an allowance of time for delays occasioned by the act, omission or fault of the defendant nor that a certificate of such delays be given, but for unnecessary delay and non-performance by the plaintiff the city was given the right to abrogate the contract.

The defendant's evidence in the form of certificates and letters and testimony of those connected with the work shows that the inspectors' time was 978¾ days; that 139½ days were allowed for unsuitable weather, and that 352 days were allowed for delays occasioned by the city, leaving as overtime above the 350 days stipulated in the contract 137¼ days to be charged the contractor, which, at $4 a day, amounted to $549, the sum deducted. The evidence offered by the plaintiff was directed to showing that 510 instead of 352 days should be allowed for the delays occasioned and recognized by the city, and, moreover, that in addition the city was responsible for loss of time in the execution of the contract after the work was awarded, owing to questions which had arisen regarding the debt limit and other matters.

It was further claimed by the plaintiff upon the trial that the computation made by the defendant and the view taken by the court were erroneous in confusing "inspectors' days" and calendar days. The main insistence of the plaintiff, however, was that the first cause of action should not be submitted to the jury, but that the court should direct a verdict in his favor, and to the refusal of the court so to do an exception was taken. This exception is urged on our attention upon this appeal, and it is contended that the prosecution of the work having concededly been hindered and delayed by the defendant's fault, this abrogated the time limit of 350 days prescribed in the contract, and no deduction should be made by the city, the plaintiff having performed the work within a reasonable time.

If this first cause of action was one properly submitted to the jury, then, upon the evidence adduced, their verdict in defendant's favor should not be disturbed. We think, however, that the plaintiff's contention that the conceded delays occasioned by the city abrogated the provision of the contract with respect to damages for overtime, and thereafter the contractor might complete within reasonable time, is correct. No provision of the contract permitted an allowance for delays by the city, and, in the absence of such a provision, it is inconsistent to hold the plaintiff for overtime in performing and on the other hand compel him to allow delay on the part of the city. (*Dady* v. *Mayor,* 57 Hun, 456; *Weeks* v. *Little,* 89 N. Y. 566; *Phelan* v. *Mayor,* 119 id. 86.) In *Dady* v. *Mayor*

(*supra*) it was said: "When the city caused any substantial delay in the work, it lost the right to charge the contractors with the stipulated liquidated damages for overtime, and could only insist that the time of completion should be reasonable." Here the city did not claim nor attempt to establish that there was any unreasonable delay by the contractor, but it stood upon its rights given by that provision of the contract which prescribed the time limit and damages. We think, therefore, that the city was not justified in deducting the sum mentioned or any sum as damages for overtime, and that, for the amount retained as such damages, a verdict should have been directed in plaintiff's favor. It is unnecessary to discuss the subject of the proper manner of computing the overtime, in view of the conclusion at which we have thus arrived with respect to the first cause of action.

The second cause of action is to recover $1,836 for increased cost occasioned by the defendant permitting other contractors to place filling upon the line of his sewer construction, thus necessitating extra labor. That such extra work was performed is not disputed, but the defendant's claim is that the plaintiff was aware that the filling would be placed upon the avenues by those who preceded him; that the contract so indicated and that the city in any event, allowed him for the delay thereby occasioned.

Allowance merely for delay, however, would not compensate the plaintiff for the work performed in removing the filling. Nor do the terms of the contract referred to show that the city was not to be liable for extra work occasioned by its permitting others to place filling which it would be necessary for the plaintiff to remove. The particular provisions relied upon by the city in this respect state: "It is further agreed that should *postponement* or *delay* be occasioned by the precedence of other contracts on the line of the work which may be either let or executed before or after the execution of this contract, no claim for damages therefor shall be made or allowed, nor shall any claims for damages be made or allowed in consequence of the street or adjoining sewer not being *in the condition contemplated* by the parties at the time of making the contract except that if the contractor shall be delayed * * * by reason of the street or adjoining sewer not being in such condition, such allowance of time shall be made him as shall be deemed reasonable.

First Department, April Term, 1903.          [Vol. 82.

* * * Any *incumbrances* or *obstructions* which may be upon the line of the work when it is begun or may thereafter be placed there, shall if directed by the engineer be removed by the contractor at his own expense."

The facts show that the contract was awarded the plaintiff in November, 1897, and executed October 26, 1898, for the construction of a sewer in and along various streets and avenues including portions of Crotona avenue and Arthur avenue. On August 11, 1897, a contract was awarded by the city to Alfred P. Whitton for regulating and grading Crotona avenue, including that part thereof in which the plaintiff was to construct the sewer; and on March 10, 1898, a contract was awarded by the city to George Clark for the regulating and grading of Arthur avenue including that part thereof in which the plaintiff was to construct his sewer. Under their contracts with the city the said Whitton and Clark proceeded to regulate and grade the said avenues and, in so doing, filled in for a considerable depth before the plaintiff had reached with his sewer those portions of the avenues. The work of these contractors was not begun when the plaintiff looked over the location, and, when it was begun, the plaintiff notified the city and objected to the filling in for the reason that it would be necessary for him to excavate the same for his sewer. The exact amount of filling removed by the plaintiff was testified to by him and the cost thereof, and the city does not dispute the sum named of $1,836. We think that the contract did not free the city from liability for work caused in the manner indicated. The filling in of the avenues by others to whom had been awarded contracts for regulating and grading such avenues was not in the nature of an "incumbrance or obstruction" contemplated by the parties; nor was it a "change of condition" such as could have been contemplated. By its own act in permitting the other contractors to proceed with grading and regulating the very streets and avenues in which the plaintiff was directed to construct his sewer in accordance with the condition of the locality as it originally was, the city increased the plaintiff's work, and for the additional cost it should respond in damages. Although not obliged to wait until he had constructed his sewer in those avenues, it should, after directing against his protest such work to be done, reimburse him for the expense thereby entailed

upon him. (*Rogers* v. *City of New York*, 71 App. Div. 618; affd., 173 N. Y. 623.) In the *Rogers* case also a contractor for sewer work was obliged to remove filling placed on the line of his work by a contractor who preceded him in the avenue and for the increased cost a verdict was directed in plaintiff's favor and the judgment so entered was affirmed by this court and the Court of Appeals. Upon the authority of that case, therefore, the court here should, as the facts are not disputed, have directed a verdict in plaintiff's favor.

The third cause of action is to recover the sum of $13,306.63 for damages and increased cost occasioned by false representations of the city as to the existence of a sewer at the Southern boulevard. The map submitted to the plaintiff by the city was put in evidence to show that such representation was made. One of the city's engineers testified that he was familiar with plans and profiles of sewer contracts and with the meaning of the different marks and colors used and that the two black lines upon the map turning around in Southern boulevard (at the intersection with East One Hundred and Eighty-seventh street) indicates work that has been finished at that point and the figures indicate the size of the sewer; that he should consider that work as already constructed and the work to connect with it; that a proposed sewer would not be so indicated. Previous to this testimony the court had refused to permit a contractor to testify as to the meaning of the lines referred to upon the map and exception was taken. The advertisements for the contract, it was shown, instructed bidders to visit the locality as well as to examine the maps and specifications and the plaintiff personally went to the place and saw no indications of manholes of the sewer but, he says, concluded that as the boulevard was not graded, the manholes were covered. As matter of fact there was no sewer at the place indicated on the map. Had there been one available and serviceable to the plaintiff it was testified that a drainage would have been established which would have avoided expensive pumping that was done and for which the plaintiff asks damages. The contract stated that "The building of the sewer shall commence at the Southern Boulevard as shown on the plan of the work," but the city did not in fact direct the work to be commenced at that point. It further appears with respect to this provision of the contract that

the words " existing sewer in " had originally followed the words " commence at the" and had been stricken out. The contract also, as before stated, stipulated that " no claim for damages therefor shall be made or allowed   *   *   *   in consequence of the   *   *   * *adjoining sewer* not being in the condition contemplated   *   *   * except that if the contractor shall be delayed   *   *   *   by reason of the   *   *   *   adjoining sewer not being in such condition, such allowance of time shall be made," etc.   Furthermore the contract distinctly provides : " The contractor at his own expense shall keep all the trenches   *   *   *   free from water and shall provide and keep in operation on the work a steam pump or steam pumps *   *   *   when notified to do so   *   *   *. The contractor shall at his own expense pump out or otherwise remove any water which may be found or shall accumulate in the trench and shall form all dams or other works necessary for keeping the excavation clear of water during the progress of the work."

We think, therefore, that the plaintiff failed to show that it was contemplated by the parties and agreed that he should have the right and privilege of using a sewer at the intersection of East One Hundred and Eighty-seventh street and the Southern boulevard, even though the maps indicated that there was a finished sewer at that point.   No harm was done the plaintiff by the exclusion of the evidence which he offered as to the meaning of the maps, because such evidence would merely have been cumulative, the engineer for the city having testified that the maps did indicate a finished sewer in the Southern boulevard.   The contract contains no provision that the plaintiff should have the right to use a sewer at that or any other point for drainage, and no representation, so far as the evidence shows, was made that there was a sewer properly connected and leading to a place to which the drainage might flow.   From the fact that the Southern boulevard was not graded it would seem that the plaintiff should have been apprised that no sewer was in operation there.   The provision in the contract was that at his own expense the contractor should provide a pump and keep the trench clear of water.   And apart from the question as to whether it was or was not represented that a sewer was in Southern boulevard, there was neither contract nor representation by the city that the contractor could use it or that it was fit and suitable for

drainage.    In other words, the city entered into no contract, express or implied, that it would supply a sewer that would drain off the water ; but, on the contrary, the contractor agreed to supply the necessary pumps and facilities for that purpose.

It follows, in our opinion, that the plaintiff has no basis for claiming damages for the cost of pumping and the failure of the city to supply him with a serviceable sewer for drainage ; and that the trial court properly dismissed the third cause of action, and the judgment so entered should be affirmed.

It will be unnecessary to more than briefly refer to the fourth and fifth causes of action.    The former related to loss of profits on rock excavation, which work was performed by another contractor, and the amount demanded was $869.    This claim was upon the evidence submitted to the jury, and their verdict in plaintiff's favor for the sum of $600 is, we think, upon this subject conclusive as to the rights of the parties.

The fifth cause of action was for damages alleged to have been sustained by the city's requiring, during a part of the time the work was progressing, that the contractor should restrict his laborers to eight hours a day.    It appears that this was in accordance with the terms of his contract ; and it follows that the plaintiff had no standing to recover for not being permitted in violation of his agreement to work more than eight hours a day.    We think, therefore, that the trial court was right in dismissing this cause of action.

Our conclusions upon the whole case are that the judgment and order denying motion for new trial should be reversed and a new trial ordered, with costs to appellant to abide event.

The appeal from the order denying motion for reargument should be dismissed, with ten dollars costs.

VAN BRUNT, P. J., McLAUGHLIN and LAUGHLIN, JJ.; concurred ; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting) :

I think the judgment should be affirmed.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.    Appeal from order denying motion for reargument dismissed, with ten dollars costs.