JAMES PILKINGTON COMPANY, INC., Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

First Department, December 19, 1924.

**Municipal corporations — action by sewer contractor to recover for extra work not within contract which city required to be done — extra work was caused by water flowing into excavation from existing sewer and from abandoned sewer — city knew several months before contract was let that existing sewer was broken — contractor not required to make borings — city's borings did not show broken sewer — city not relieved by provision in contract that contractor should not make claims for damages arising from unforeseen obstructions or difficulties — city not relieved by clause allowing no claims arising from breaking of sewers — engineer's final certificate not bar to plaintiff's recovery — requirement that contractor keep trench free from water applies to ordinary surface and ground water — contract does not exempt city from damages arising out of its neglect in allowing existing sewer to remain out of repair — provision against contractor pleading misunderstanding or deception does not relieve city from negligence — damages — difference between cost of keeping excavation free from ordinary surface and ground water and cost of keeping excavation free from water from broken sewer is proper measure of damages — plaintiff is not entitled to recover for extra work caused by water flowing from abandoned sewer.**

A contractor who undertakes to construct a sewer in the streets of the city of New York is entitled to recover from the city the cost of extra work caused it by water flowing from an existing sewer into the excavations made by the contractor, on the theory that the extra work was not within the provisions of the contract, where it appears that the city knew several months before the contract was let that the existing sewer was broken and out of repair.

Recovery may be had notwithstanding provisions in the contract to the effect that borings made by the city which did not show the existence of the broken

sewer should not be relied on by the contractor in making his bid for the contractor was not required to make borings itself in view of the fact that the contract was let upon unit prices and the work was to be done under many busy streets.

The city is not relieved from liability by a provision in the contract that the contractor should not make any claim on account of any loss or damages arising out of unforeseen obstructions or difficulties since the minds of the parties never met upon the subject of pumping out of the excavations the water which flowed into them from the broken existing sewer and that work was entirely outside the contract.

Nor is the city relieved from liability by a provision in the contract allowing no claims for the breaking of water mains, sewers or gas mains on or near the line of work, for that provision relates to mains that are broken by the contractor in the course of his work and not to the mains that were broken prior to the letting of the contract.

The provision in the contract that the engineer's final certificate shall be conclusive will not bar the contractor from recovering the cost of extra work although the contractor accepted under the final certificate the amount which the city admitted to be due him, since he reserved his rights to demand pay for the extra work caused by the broken sewer.

The requirement in the contract that the contractor should at all times during the progress of the work keep the trenches and excavations free from water applied merely to the ordinary surface and ground water and did not compel the contractor at his own expense to remove from the excavations water flowing into them from the broken sewer and he may recover the cost of freeing the trenches from that water.

Furthermore, there is no provision in the contract exempting the city from its liability for damages arising out of its own negligence in allowing the existing sewer to become and remain out of repair to such an extent as to permit the water therefrom to flow into the excavations, nor could it be apprehended that the consequences of that negligence were contemplated by any provision in the contract.

Although the contractor is debarred from pleading misunderstanding or deception because of the conditions surrounding the work and may profitably make no claim after having satisfied himself by his own investigation respecting conditions affecting the work to be done, nevertheless the rule is that a contractor may recover when a city neglects its own duties along the line of the work and damages accrue therefrom.

Damages were properly proved by evidence showing the cost of freeing the excavation from ordinary surface and ground water in those streets covered by the contract in question in which the existing sewer was not broken and by evidence showing the cost of freeing the excavation from water in those streets where the existing sewer was broken; the difference in the cost is the proper measure of damages.

The plaintiff is not entitled to recover for the cost of freeing the excavation from water flowing into it from the abandoned sewer since that obligation was assumed by the contractor under the terms of the contract.

MARTIN, J., dissents.

MOTION by the plaintiff, James Pilkington Company, Inc., for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after granting defendant's motion to dismiss the complaint and denying plaintiff's

motion to go to the jury at the close of the case upon a trial before the court and a jury at the New York Trial Term in May, 1923.

*Philip J. Britt* of counsel, for the plaintiff.

*George P. Nicholson, Corporation Counsel* [*Elliot S. Benedict* of counsel; *John F. O'Brien* and *James P. O'Connor* with him on the brief], for the defendant.

McAvoy, J.:

The plaintiff, James Pilkington Company, Inc., was a contractor with the city of New York for the construction of sanitary sewers in Grand, Thompson and Canal streets, and also in other streets in that neighborhood. While the contract was being carried on, however, it encountered an abandoned sewer which had become full of water, existing sewers which were broken and dilapidated, and various sewer basins improperly maintained which by reason of defective conditions permitted water to pour into the excavations which plaintiff made and which required extraordinary pumping and draining off of these waters so as properly to carry out the work enjoined by the contract and its specifications.

In the contract itself neither the abandoned sewer nor the existing sewers, which paralleled the new sanitary drainage system, were mentioned as existing obstructions to the work, nor was their removal provided for, nor their shoring up required under contract, plan or specified items of the contractual duties to be assumed in the proposals for bids, nor under the specifications for the work. The city may escape liability for this doubtless unusual and extraordinary work, not apparently provided for in its agreement with its contractor, if any of the clauses of its contract exempting it from liability for unforeseen contingencies arising in the course of the work and the clauses covering the duty of the contractor to inform himself fully as to conditions surrounding the work and likely to interfere with its progress, apply to the facts which are here presented.

This city contract contains the standard provisions against claims by a contractor of the nature just mentioned which are intended to exempt it from liability, but ingenuity of drafting has not yet succeeded in covering every sort of liability which may arise against it for so-called breach of contract as a result of which extra work is necessary, and there are some instances in which recovery has been allowed.

The clauses of the contract upon which the city relies to defeat the claim now made run:

" 23. The contractor shall at all times during the progress of the work keep the trenches and excavations free from water. * * *

" 24. The cost of all labor required to be done and all materials required to be furnished in the performance of all the work specified in sections 12 to 23, inclusive, except as otherwise provided, shall be covered by all the contract prices for all the items for which there are contract prices."

And in the proposal for bids on this work these provisions are urged as inhibiting the plaintiff's prevailing:

" 4-a. The location, general character and essential details of the work are shown upon a set of 12 contract drawings on file in the Office of the Commissioner of Public Works, Bureau of Sewers, Borough of Manhattan, designated ' Sanitary System of Sewers with Pumping Station and appurtenances in Thompson Street, from Canal Street to a point about 350 feet north of Broome Street, etc.,' bearing accession number 23011 and dated September 1st, 1917.   *   *   *

" 4-c. The test and exploration pits, the data from which is recorded on the aforementioned record drawings, while they do not give complete information, show that at the time they were excavated considerable ground water was encountered, and it is believed that at times the ground water table may rise to elevations at or near the surface of the streets.

" 4-d. Sub-surface structures are generally shown on the record drawings, and are present in all streets.   It is expected that the sub-surface data shown is incomplete and often not accurate or reliable, and bidders shall not use such data for making prices, nor a contractor for executing the work until he has verified it, or secured other correct and complete data."

None of the drawings are made a part of the record on appeal except a portion of sheet 4 which merely shows the street layout and location of test pits, their elevations, and certain other data as to what was found in regard to water, soil conditions, presence of sewers, etc., upon the sinking of the pits.   There was no attempt, except where revealed by the test pit diagram, to show upon such sheet the location of any subsurface structures, including sewers.

The proposal also referred prospective bidders to the engineer's estimate of quantities and kind of labor required, which included material and labor necessary to fully complete the work, and warned such bidders that such estimates were approximate only and not to be considered binding, and that they must make personal examination of the location of the proposed work and should at no time assert that there was any misunderstanding " in regard to the quantity or kind of materials to be furnished or work to be done."

36

The proposal also contained this provision: " No compensation beyond the amount payable for the several classes of work hereinbefore enumerated, which shall be actually furnished and performed at the prices paid therefor by the bidder to whom the contract is awarded shall be due or payable for the entire materials and work."

The contract itself also contains provisions similar to those recited in the clauses quoted above.

Another provision of the contract states:

" XXII. The contractor shall provide at his own cost for the flow of the sewer, drains and water courses interrupted during the progress of the work  *  *  *."

Then follows a' clause to the effect that the contractor has inspected public records of the city departments having control of the various subsurface structures, including sewers, and has made such personal inspection and investigation as he deemed proper to determine the correctness of the information so obtained, " and agrees that he will not make any claim against the City for damages or extra work caused  *  *  *  by his relying upon such records."

A provision which the city considers as most destructive of plaintiff's claim is this, viz.:

" XXXIX. The contractor agrees to assume and to make no claim on account of any and all loss or damages arising out, of the nature of the work to be done under this contract, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or from incumbrances on or near the line of the work, or from the breaking of water mains, sewers or gas mains on or near the line of the work."

The contract also makes provision for the binding effect upon the contractor of the engineer's final certificate, and recites that the contractor has examined " the location where said work is to be done," and that he thoroughly understands the contract and what is intended thereby and by the plans and specifications and agrees that he will make no claim on the city on the ground of misunderstanding.

Plaintiff commenced work under the contract by constructing the pumping station in Canal street, which it finished prior to May 15, 1918. While the construction of such pumping station was going on, the contractor started work on the Thompson street sewer and continued until sometime in October, 1918, when the work had reached about 100 feet north of Grand street. The contractor then started work at Thompson street and excavated

east on Grand street to about 50 feet west of Wooster street and this work continued until March 27, 1919. On April 25, 1919, work was started on the sewer excavation in Wooster street, working from Grand to Canal; then in Broome street between Thompson street and West Broadway; in West Broadway from Canal to Broome; and in Watt street from Thompson street to West Broadway. Work on the Thompson street sewer resumed early in the month of March, 1919, and continued until April 24, 1919.

Just when the entire work was finished under the contract does not appear (except from the complaint), but the engineer's final certificate, dated July 27, 1920, was approved by the acting borough president on August 2, 1920, showing a balance due of $27,702.96 on the total amount of the contract for $217,669.02. This total sum was paid to the plaintiff and a release was given containing an exception which refers specifically to this claim.

From the complaint it is apparent that the theory of the action is that a breach of contract by the city was committed in compelling the plaintiff, over its protest, to perform certain work and furnish and operate certain equipment, and to supply certain materials to do the work required by the contract outside of the terms of the contract itself, thus rendering the work more expensive than it would have been according to the terms of the contract. It is also alleged in the complaint that said work was rendered more expensive by reason of the negligence of the city in the following particulars: Its ownership, maintenance and operation in Thompson street between Canal and Spring streets, about seven feet east of the westerly curb of Thompson street, and seven feet below the surface, of a sewer (referred to in the testimony as the " existing " sewer); its ownership and maintenance in the center of Thompson street, between eight and twelve feet below the street surface, of an abandoned sewer; its ownership, maintenance and operation in Grand street on the north side thereof, between Thompson and Wooster streets, about seven feet below the surface of the street, of a sewer (existing sewer); its ownership and maintenance in the center of Grand street, about twelve feet below the surface, of an abandoned sewer connected with the abandoned sewer in Thompson street; and its ownership, maintenance and operation, on the four corners of West Broadway and Grand street, of four sewer basins, which existing and abandoned sewers and sewer basins were out of repair, broken, leaking and in a dilapidated and defective condition, with the abandoned sewers unsealed and not bulkheaded, so that great quantities of water leaked therefrom into the excavations made by the plaintiff for the sanitary sewer under construction in Thompson street, Grand street, Wooster

street, Broome street, West Broadway and Watt street, and flooded such excavation.

When plaintiff had proceeded with the construction of the sewer about fifty or sixty feet north of Canal street, an abandoned sewer about six feet by eight feet was encountered at a depth of eight or nine feet, with the result that the sewer plaintiff was building would have to be constructed in the middle of it. This sewer was in a good state of preservation with a great deal of water running in through the house connections and especially from the west side, so that it filled up about every four hours. A few days later, however, another sewer was encountered, described by the witness as the "existing" sewer, about eighteen inches from the west side of plaintiff's excavation, the center of which was about seven feet from the west curb line of Thompson street. Water poured out of the joints and breaks in the existing sewer and bricks fell out of it. The measurements of this sewer both in Thompson and in Grand streets were two feet six inches by two feet, with a section for eighteen feet only fifteen inches in diameter. At another point a sixteen or eighteen-inch high pressure water main passed through it.

About the middle of May, 1918, Pilkington stated that he had a conversation with Gregory, the city's engineer in charge of the work (who died before the trial), and complained to him about having to construct the sanitary sewer in the center of the abandoned sewer, and then in regard to the existing sewer, and Gregory told him that he was having a great deal of trouble with those sewers, but that he did not see anything for it but for the contractor to go ahead. Mr. Pilkington, plaintiff's treasurer and superintendent, told Gregory that the conditions could not be expected or anticipated, and that he would hold the city responsible for the damage.

Referring to Grand street, Pilkington testified that he made his excavation running east from Thompson street four feet wide, right up against the north curb line. When he got down about eight or nine feet, water poured into the trench in great quantities.

Pilkington further testified that the water above mentioned came from the "existing" sewer under the north rail of the street car tracks in Grand street. This sewer, as stated, had been cut into for the purpose of placing the yokes which supported the rails of the car tracks, the yoke being a kind of chair which carried the entire structure of the trolley tracks. Wherever the cut was wider than the yokes, water poured out of the sewer at high tide into the trench.

Pilkington gave the distance between the south side of his four-

feet excavation (against the north curb) and the north side of the existing sewer (under the north rail of the trolley track) at fifteen to eighteen inches. Afterward he stated that he made no claim for water from the " abandoned sewer " either in Grand street or in Thompson street.

Other testimony as to water coming from the existing sewer in Thompson and Grand streets related to water which ran into it whenever it was cleaned by the sewer department and whenever the street cleaning department flushed the streets for the purpose of cleaning them. It was stated that the force of the water turned on by the sewer department for flushing the sewer after the street cleaning department had washed the filth of the street into it was often sufficient to make breaks in the existing sewer in Thompson street.

Foncellino, plaintiff's foreman, also testified that the trench he dug in Grand street for the sanitary sewer was four feet wide right next to the north curb, and that the " existing " sewer, on which lay the yokes of the car tracks and from which water poured into the trench, was only eighteen to twenty inches south of the trench. Foreman Lui, who worked on another part of the Grand street excavation, gave similar testimony. Some of plaintiff's witnesses testified that the trench was flooded especially at high tide.

On this proof the complaint was dismissed, and error is asserted by plaintiff.

The rule is that where a municipal corporation by its own act causes the work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable to him for the increased cost of extra work. (*Horgan* v. *Mayor*, 160 N. Y. 516; *Gearty* v. *Mayor*, 171 id. 61; *Ryder Building Co.* v. *City of Albany*, 187 App. Div. 868.)

In determining whether or not the burden of the increased cost of the work should be borne by the contractor, the terms of the contract must be given a reasonable construction; and in reaching a conclusion upon whether the minds of the parties could have met on the point whether the work claimed for was included in or covered by the contract, the intent and object of the parties and the result to be accomplished by the contract is to be taken into consideration.

The witness Pilkington admitted that he was familiar with the contents of the notice to bidders, that he went on the various streets and examined them, but that the plaintiff did not make any borings. In view of the fact that this contract was let upon unit prices and the work was to be done under many busy streets, it could not be expected that bidders should make and rely on

their own borings, and it would have been impracticable for them to do so, for the various streets were used for the traffic which the city authorities would not permit to be interfered with. (*McGovern* v. *City of New York,* 202 App. Div. 317; *Horgan* v. *Mayor, supra.*)

None of the borings made by the city gives the slightest inkling in either Thompson or Grand streets of the fact that existing sewers therein were broken and falling apart and certain to overflow into the contractor's excavation when made in either one of these streets.

Stress was laid by the defendant throughout the trial and on the argument on the language found in clause 39 of the contract, with a view to establishing that the plaintiff was not entitled to recover. This clause provides that the contractor should make no claim on account of any loss or damages arising out of the nature of the work to be done under the contract, " or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or from incumbrances on or near the line of the work, or from the breaking of water mains, sewers or gas mains on or near the line of the work."

In the case of *Horgan* v. *Mayor* (*supra*) the contract there construed contained a clause substantially the same as the one here quoted, and it was claimed by the city that under this provision of the contract the plaintiff was not entitled to recover for the extra pumping of water from the lake in Central Park, which he found necessary to do by reason of the failure of an outlet pipe to work and allow the water to pass off. There, as in this case, the engineer representing the city insisted that the water should be removed, and contended that the contract with Horgan imposed that burden upon the contractor. The Court of Appeals held, however, that that provision, reasonably construed, did not operate against the plaintiff, as contended by the city, and that it must be held to apply to the work to be done and the unforeseen obstructions or difficulties which might be encountered under the agreement, and that the unforeseen obstruction that was there encountered and that subjected that plaintiff to a large amount of extra work was entirely outside of the contract and stood unaffected by that provision and was due to the fault of the city.

The same course of reasoning applies in the case at bar. The minds of the parties never met upon the subject of pumping out of the excavations the water by which they were flooded from the broken and dilapidated existing sewers on Thompson and Grand streets. That was as much entirely outside of this contract as

was the extra pumping necessary to get rid of the water in the lake in the *Horgan* case.

It is also said that the provision in this contract allows no claim " from the breaking of water mains, sewers or gas mains on or near the line of the work." But it is apparent that such provision evidently must be understood to mean that if the contractor in the prosecution of the work broke a water main, sewer or gas main, or if such main or sewer were broken by some emergent action over which the city had no control, he would have no claim against the city for the damages arising from this " break." It certainly could not be held to apply to sewers, the nearest sides of which were eighteen inches removed from the excavation and which had already been broken and found to be so, not only at the beginning of the work, but continuing to show those conditions in Thompson and Grand streets during the whole progress of the work on those streets, and which breaking occurred through the city's neglect to maintain them in proper condition.

Under clause 44 of the contract, relating to the final certificate issued by the defendant upon the completion of the work, it is provided that " The action of the engineer in charge of sewers, by which the contractor is to be bound and concluded according to the terms of this contract, shall be that evidenced by said engineer's final certificate," etc. Inasmuch as the work performed and material supplied, for which the claim herein is asserted, was work outside of this contract and compelled to be done by the plaintiff over its oral protest, and inasmuch as the release expressly excepted this particular claim, this clause of the contract cannot be held to defeat plaintiff's recovery. This is the usual release exacted by the city from all contractors when receiving the last payment; and it was held in the case of *Gearty* v. *Mayor* (*supra*) that this clause of the contract did not operate to destroy the plaintiff's claim, when he accepted under the final certificate the amount which the city admitted to be due him, when he had theretofore reserved his rights under oral protest and under the written release under seal. (See, also, *Faber* v. *City of New York*, 222 N. Y. 255; *Borough Construction Co.* v. *City of New York*, 200 id. 149.)

The defendant also advanced, as a reason for defeating the plaintiff's claim herein, that the specifications contained a provision that " The contractor shall at all times during the progress of the work keep the trenches and excavations free from water." This provision, of course, applied to ground water and storm water, and cannot be held to cover the water, sweepings and filth which filled the trenches on Grand and Thompson streets and

which poured out of the existing broken sewers running along on those streets parallel with the plaintiff's work, and from the dilapidated basins on the corners of West Broadway and Grand street.

Pilkington testified that when the plaintiff found the existing sewer in Thompson street for fifty-nine feet south of Grand street to be broken and the bottom out of it, and the water pouring into the cut, the plaintiff threatened to stop work immediately; that Mr. Gardiner, the engineer on the work, said that the sewer department had no money to repair these sewers; and that Pilkington replied that he would stop work unless something were done; that then the engineer returned the next day and ordered the plaintiff to build the fifty-nine feet of the sewer, and that the defendant would pay for it; and that, as a matter of fact, plaintiff was paid by the city for doing this work.

This is claimed to be a practical construction of the contract which shows that the defendant considered that it was not only liable for the breaking and rottenness of that portion of the existing sewer, but that it was liable to the plaintiff for the damages which might be occasioned by the condition of that sewer during the progress of the work under this contract.

There was enough proof of the condition of the existing sewers in Grand and Thompson streets and the receiving basins on the corners of West Broadway and Grand streets and the damage to the plaintiff wrought thereby, together with the proof of damages proportioned according to the cost of removing water where conditions were normal in adjacent streets, when taken in conjunction with the reasonable interpretation to be given to the various clauses of the contract and specifications, and the interpretation placed thereon by the defendant itself, to have required the submission of the case to the jury on the question of the city's liability.

The proof was sufficient to show that the city had actual as well as constructive notice of the broken and dilapidated condition of the existing sewers on Grand and Thompson streets, and that the four receiving basins at West Broadway and Grand street were out of repair and not in a condition to properly function, and was, therefore, chargeable with actionable negligence and liable to the plaintiff for the damages suffered.

The existing sewers of the defendant running along Thompson street and Grand street were broken, dilapidated and at some places the bottoms had fallen out, and this condition existed in Thompson street for many years prior to 1918. The Grand street sewer was shown to have been broken into and the yokes supporting the railroad cut down into the sewer, and the breaks thus caused

were shown to have remained unsealed, and water had poured from them; and this state of disrepair had existed since the construction of the railroad thirty years ago.

The defendant under this proof was called upon to explain the reasons which would relieve it from responsibility from the damages suffered by the plaintiff. No clause of the contract, proposal or specifications exempts the city from negligence in the maintenance of an existing sewer along the line of the work, nor could it be apprehended that the consequences of such negligence were contemplated by any provisions thereof.

A reasonable amount of inspection, testing and sewer cleaning by the city would have developed the fact that the sewers in Grand and Thompson streets, and the receiving basins complained of, were in a defective, rotten condition. There is no evidence in the case from which it might even be inferred that the city performed its duty of inspection, cleansing or repair.

Under these circumstances the city is unquestionably liable to the plaintiff for the damages claimed in this action.

In *Sundstrom* v. *State of New York* (213 N. Y. 68), wherein the plaintiff claimed damages against the State on the ground that through its fault they had been subjected to increased expense by reason of the leakage and overflow from the old Champlain canal into a section of the Barge canal which they were constructing, Judge CARDOZO, writing the unanimous opinion of the court, says: " As we view the case, this element of contiguity is not controlling. The question is not so much ' where did the leaks arise? ' The question is rather, ' who was responsible for their existence? ' Undoubtedly the claimants assumed the risk of any unforeseen conditions not due to the fault of the State, but, in the absence of actual notice, we do not think they assumed the risk of unforeseen conditions due to the negligent omission of the State to repair and safeguard its own structures. * * * We do not say that its liability to its contractors goes so far as its liability to adjoining owners. There is certainly no liability to contractors in the absence of negligence. We think, however, that even toward contractors the State is under a duty to use reasonable care in maintaining its own property in safety, and that for failure to fulfill that duty it is answerable in damages. *A contractor undertaking work of excavation near a sewer in a city street would have to bear the extra cost due to the proximity of the obstruction, but, unless by special contract, he would not assume the risk of the city's flooding his work because of a negligent omission to keep its sewer in repair.* Such a case does not differ in principle from the one before us. In these circumstances, we must apply against the State the

principle applied against a municipal corporation in *Horgan* v. *Mayor, etc., of N. Y.* (160 N. Y. 516)."

Although the contractor is debarred from pleading misunderstanding or deception because of conditions surrounding the work, and may profitably make no claim after having satisfied himself by his own investigation respecting conditions affecting the work to be done, nevertheless the rule is pronounced that he may recover when the State or its similarly situated municipal subdivision neglects its own duties along the line of the work and damage accrues therefrom. This is also a pertinent paragraph in the *Sundstrom* case: " The claimants do not assert that in making the contract they were misled by any estimate of quantities or other information prepared by the State Engineer. They do not assert that they made it in reliance upon anything except their own investigations. They make no claim against the State because any of the estimates, tests or representations of any kind affecting the work, made by any officer or agent of the State, have proved to be in any way erroneous. We conclude, therefore, that the special clauses of this contract do not cover the situation which has arisen in the case before us. The rights of the parties must accordingly be governed by the general rules of law. We do not think it is an adequate answer for the State to say that it was possible for the claimants, by sufficient examination of the old canal or the adjoining land, to have ascertained that leaks had occurred in the past and would occur in the future. They were not bound to carry their investigations so far. They were under no duty to be on their watch in order to discover whether the State had been negligent in the discharge of its own duties. If they had knowledge of the defects, they should be held to have assumed the risk. If they did not have knowledge, it is not sufficient that they could by diligent effort have acquired it."

There was a showing of actual notice of the condition of the sewers in Thompson and Grand streets, and the basins at West Broadway and Grand street, to the defendant in the fall of the year 1917, and from four to six months before this contract was executed; and, therefore, there can be no claim on the part of the city, and, indeed, there was none asserted by the city, that it did not have sufficient time within which to repair these sewers. On the contrary, there was ample time between the notice and the time when the plaintiff opened the excavation in Thompson street in May, 1918, within which the bad conditions of which the city had notice might have been remedied.

The evidence was such as to sustain a finding that the defendant failed to exercise the proper amount of care and diligence in the

keeping and maintenance of these sewers and appurtenances, and that it was wholly and inexcusably negligent in regard to its duties respecting them, whereby this plaintiff was damaged and it was entitled to a jury's verdict on the damages.

It is said by defendant that the proof on damage was inadequate for a proper admeasurement. Under the contract the construction of the sewer was required in several streets other than those in which the plaintiff claimed to have suffered damages by reason of the defendant's negligence. On some of those streets, for instance on Broome street between Clarke and Greene streets, on Canal street between Thompson and Sullivan streets, on Broome street between West Broadway and Greene street, and upon other streets referred to in the testimony, when the cuts in these streets were opened, there was found little or no water to be taken care of by the contractor, and such as was found there was taken care of by hand pumps. In Clarke street there was no water of any kind, not even ground water; and the same condition existed in Broome street between Clarke and Greene streets. In other streets there was more water encountered than in those just mentioned, and there the plaintiff contends an average amount of water from all sources had to be removed, as in, for instance, Canal street east of Thompson street to Greene street, and from Greene street between Canal and Grand streets. There the water was removed by hand pumps, and for about a week or ten days a gasoline pump was used to remove the water from all sources that came into the cuts on these streets. The substitution of the gasoline pump during the time it was working on Canal street did not increase the expense over the operation of the hand pump. Outside of Thompson and Grand streets, and the other four streets complained of by plaintiff, the proof shows that there was more water to be discharged from the cuts on Canal and Greene streets than from the cuts in any of the others.

Plaintiff's method of establishing what would have been the reasonable cost of the labor on Thompson and Grand streets had the conditions there been similar to the average conditions which obtained in Canal and Greene streets, was to take the cost of the labor and hand and gasoline pumps on the two latter streets and compare that part of the cost of construction with the cost of the labor and pumping on Grand and Thompson streets. The hand and gasoline pumps were sufficient to discharge the water from all sources coming into the cuts on Canal and Greene streets. The cuts on these two streets measured substantially the same in cubic feet as the cuts on Grand and Thompson streets. The proof shows that, had it not been for the broken existing sewers on Grand and

Thompson streets, the subsurface and rain water conditions there would have been about the same as found at all other streets in that neighborhood, in which the plaintiff was carrying out this work of construction, and could have been removed by hand or gasoline pump.

The work on Grand and Thompson streets was proceeding at the same time as the work on Canal and Greene streets, and, therefore, the bottom surfaces of the excavations on these two sets of streets being substantially the same, the same amount of tide or storm water which was found in these cuts had to be removed by the contractor under the contract at his expense. The amount of the ground water found in these two sets of streets being about the same, the plaintiff was entitled to be allowed for the labor and pumping in Thompson and Grand streets, necessitated by the flooding from the existing sewers thereon, which conditions were not present in either Canal or Greene streets.

This basis of comparison which was adopted by the plaintiff in this action for the purpose of establishing his damages is practically the same as that adopted in the fifth cause of action upon which the plaintiff recovered in the action of *McGovern* v. *City of New York* (202 App. Div. 317, 332), which was subsequently affirmed on the appeal to the Court of Appeals in that action in 235 New York, 275, 277.

This is the sole means of calculation of extra labor caused by this flow of water, and is not speculative. If the ground and tide water in both sets of streets were the same, and if the same amount of rain water fell upon the exposed surfaces of the cuts, which were equal in surface area, and during the same time, all of which was proven, it appears to furnish the only reasonable and practical method to be sought in the establishment of the amount of plaintiff's damages with reasonable certainty, or to furnish the jury with a reasonable basis of calculation.

The abandoned sewer on Thompson street seems to be such an obstruction as the contractor could not recover for under the contract's exceptions, but eliminating this, the other damage was computable under other proof in the case, and in any event could have been made so by proper instruction to the jury.

The exceptions should be sustained and the motion for a new trial granted, with costs to plaintiff to abide the event.

CLARKE, P. J., DOWLING and FINCH, JJ., concur; MARTIN, J., dissents.

Exceptions sustained and new trial granted, with costs to the plaintiff to abide the event. Settle order on notice.