[Civ. No. 10024. Second Appellate District, Division Two.—April 29, 1935.]

GILBERT J. SHEA et al., Respondents, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and D. M. Kitzmiller and Grant B. Cooper, Deputies City Attorney, for Appellant.

Lewis E. Whitehead and Leslie K. Floyd for Respondents.

SCOTT, J., *pro tem.* — Plaintiffs recovered judgment against defendant for work done in connection with construction of a storm drain and defendant appeals.

The plans for the storm drain showed a sanitary sewer below and parallel to a portion of the storm drain. While excavating this portion plaintiffs discovered leakage from the sewer due to defects in it and too great pressure, so that the trench was flooded and the sides caved in. Complaint was made to the board of public works of defendant city and with their approval and under their direction plaintiff pumped out the water and went ahead with his work. One cause of action in this case was for damages based on the foregoing facts.

The plans also showed that some filling in was "in progress" or "contemplated" on a portion of the ground which was below the level to be attained on completion but just how much and when it was to be filled in could not be ascertained by plaintiffs before they made their bid. After the bid was in, certain filling in was done on certain streets under the control of defendant pursuant to the permission given by defendant. This necessitated excavation and tunneling in addition to that called for at the time the bid was submitted and the expense thereof constituted further causes of action by plaintiffs.

The contract was entered into and the work was done under the "Improvement Act of 1911" (Stats. 1911, p. 730), as amended. The contract contained language which reasonably may be construed as requiring plaintiffs to inform themselves as to conditions and to bear the burdens incidental to overcoming the obstacles which might appear and were in part as follows: "Sec. 2. Examination of Ground. Bidders must examine and judge for themselves as to the location and surrounding of the proposed work, the nature of the excavation to be made, and the work to be done. The plans, profiles and other drawings for the work will show conditions as they are supposed or believed by the City Engineer to exist, but it is not intended or to be inferred that the conditions as shown thereon constitute a representation by the City, or its officers, that such conditions are actually existent, nor shall the City or any of its officers be liable for any loss sustained by the contractor as a result of any variance between conditions as shown on the plans and the actual conditions revealed during progress of the work or otherwise." "Sec. 15. Loss or Damage. All loss or damage arising from any unforeseen obstruction or difficulties, either natural or artificial, which may be encountered in the prosecution of the work, or from any action of the elements prior to the final acceptance of the work, or from any act or omission not authorized by these specifications on the part of the contractor, or any agent or person employed by him, shall be sustained by the Contractor." "Sec. 102. Extent of Excavation. The contractor shall make sufficient excavation to construct all work shown on the plans. Excavation shall include the removal of all water and all materials or obstructions of any nature that would interfere with the execution of the work. The bottom of excavation shall be free from all loose material at the time concrete is deposited. . . ."

It is apparent, however, that the contract did not contemplate that plaintiffs should bear the burden of the city's negligence in doing or permitting acts which would constitute an obstacle to plaintiffs in fulfilling the obligations imposed by the contract. ■ While the city may have had a right to negligently maintain its sewers and to fill in its streets before the contract was made, it abridged that right when it entered into the contractual relation with plaintiffs. When the contract in question was executed by defendant

and plaintiffs, the law imposed on defendant city a new obligation, to wit, that of maintaining its sewers and filling in its streets in such a manner that it would not impede plaintiffs in carrying out the task of constructing the storm drain. If that duty was violated, the plaintiffs were entitled to damages to compensate them for the detriment thus caused. As Mr. Justice Cardozo stated in the case of *Sundstrom* v. *State,* decided by the Court of Appeals of New York (213 N. Y. 68 [106 N. E. 924]) in considering detriment to the contractor engaged to build a canal, by reason of leaks in a near-by old canal: "Undoubtedly the claimants assumed the risk of any unforeseen conditions not due to the fault of the state, but in the absence of actual notice, we do not think they assumed the risk of unforeseen conditions due to the negligent omission of the state to repair and safeguard its own structures. . . . We think that even toward contractors the state is under a duty to use reasonable care in maintaining its own property in safety and that for failure to fulfill that duty, it is answerable in damages. · A contractor undertaking work of excavation near a sewer in a city street would have to bear the extra cost due to the proximity of the obstruction; but unless by special contract, he would not assume the risk of the city's flooding his work because of a negligent omission to keep its sewer in repair. In these circumstances, we must apply against the state the principle applied against a municipal corporation in *Horgan* v. *Mayor etc. of New York,* 160 N. Y. 516 [55 N. E. 204]. The ruling there was that, if such a corporation by its own act causes work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable for the increased cost." In considering terms in the contract there in question comparable to those set forth in this case, the court held that the contractors "were under no duty to be on their watch in order to discover whether the state had been negligent in the discharge of its duties. . . . If they did not have knowledge, it is not sufficient that they could by diligent effort have acquired it."

It appears in this case that plaintiffs had no knowledge of the defects complained of until the damage started to occur.

The appellate division of the New York Supreme Court has considered many of the problems here presented. In

*Ryder Bldg. Co.* v. *City of Albany,* 187 App. Div. 868 [176 N. Y. Supp. 456], it said: "In every express contract for the erection of a building or for the performance of other constructive work, there is an implied term that the owner or other person for whom the work is contracted to be done, will not obstruct, hinder or delay the contractor, but, on the contrary, will in all ways facilitate the performance of the work to be done by him" and held that in case of such breach the party "became liable for damages, measured by the extra expense incurred". In *Thilemann* v. *City of New York,* 82 App. Div. 136 [81 N. Y. Supp. 773, at page 777], the court stated: "By its own act in permitting the other contractors to proceed with grading and regulating the very streets and avenues in which the plaintiff was directed to construct his sewer in accordance with the condition of the locality as it originally was, the city increased the plaintiffs' work and for the additional cost, it should respond in damages."

In considering the situation of a contractor who encountered defective sewers, the court in *Pilkington Co.* v. *City of New York,* 211 App. Div. 558 [207 N. Y. Supp. 118], reaffirmed the rule declared in *Sundstrom* v. *State, supra.*

No question is raised on this appeal as to the reasonableness of the amount of damages awarded.

Judgment affirmed.

Crail, J., and Stephens, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1935.