WILLIAM G. HORGAN, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

1. MUNICIPAL CONTRACT — CONTRACTOR'S WORK ENHANCED BY ACT OF MUNICIPALITY. If a municipal corporation, by its own act, causes the work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable to him for the increased cost or extra work.

2. CONTRACT FOR IMPROVING BOTTOM OF PARK LAKE — REMOVAL OF WATER — EXTRA WORK. A contract for clearing and concreting the bottom of a park lake for the city of New York contained provisions that the contractor should drain off all water from the bottom during the progress of the work, that he should furnish all pumping or bailing required for the proper prosecution of the work, and that he should satisfy himself as to the nature and amount of the work to be done, by personal examination of the location. There was an outlet pipe in the bottom of the lake, the gate of which only was visible on the contractor's personal examination of the proposed work, but on his attempting to draw off the water thereby, in the progress of the work, the underground pipe or sewer proved to be obstructed, and failed to remove the water for a considerable depth. The contractor was consequently compelled to pump out the water, and for so doing he claimed to recover from the city as for extra work. *Held*, that the contract did not contemplate the contractor's pumping out the water of the lake in a general sense; that he could properly assume that the water could be discharged through the outlet the city had constructed for that purpose; and that he was entitled to recover as for extra work the cost of pumping necessitated by the failure of the city to have the outlet pipe in working order.

3. PROVISION SUBJECTING CONTRACTOR TO OBSTRUCTIONS IN WORK, NOT APPLICABLE TO OBSTRUCTION OUTSIDE OF CONTRACT. The contract contained this provision: "All loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same or from the action of the elements, or from incumbrances on the line of the work, or from any act or omission on the part of the contractor, or any person or agent employed by him, not authorized by this agreement, shall be sustained by said contractor." *Held*, that this provision applied to the work to be done, and to the unforeseen obstructions or difficulties which might be encountered, under the contract, and therefore did not affect the extra work to which the contractor was subjected by reason of the unforeseen obstruction in the outlet pipe, such obstruction being entirely outside the contract.

*Horgan* v. *The Mayor*, 21 App. Div. 405, reversed.

(Argued October 4, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 3, 1897, affirming a judgment in favor of defendant, entered upon a dismissal of the complaint at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles W. Dayton* for appellant. Plaintiff had a right to contract, and did contract, with reference to the existence, proximity and utility of the sewer. (*Reilly* v. *Mayor, etc.*, 111 N. Y. 473; *Metropolitan Bank* v. *N. F. Co.*, 73 Ill. App. 164; *Guccione* v. *Scott*, 21 Misc. Rep. 410; *Gallup* v. *Sterling*, 22 Misc. Rep. 672; *Colwell* v. *Lawrence*, 38 N. Y. 74; *Cotheal* v. *Talmage*, 9 N. Y. 554; *Booth* v. *C. M. Co.*, 74 N. Y. 15.) The interpretation by the Appellate Division of this contract was not contended for below by respondent, and is untenable. (*Barton* v. *City of Syracuse*, 36 N. Y. 54; *Nims* v. *Mayor, etc.*, 59 N. Y. 508; *Ballou* v. *State of New York*, 111 N. Y. 501; *Hutson* v. *City of New York*, 9 N. Y. 163.) The city contracted that the sewer was in good repair, and was to be used in "conducting the flow of the water" in draining the pond. (*N. E. I. Co.* v. *G. E. R. R. Co.*, 91 N.

Y. 153; *Jugla* v. *Trouttet,* 120 N. Y. 21; *Jones* v. *Kent,* 80 N. Y. 585; *Booth* v. *C. M. Co.,* 74 N. Y. 15; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205.) The pumping of the water to the overflow basin, having been made necessary by reason of defects in defendant's outlet from the pond and in its connecting sewer, thereby rendering the cost of the work more expensive than contemplated by the parties at the time of the execution of the contract, plaintiff is entitled to recover from defendant such increased cost. (*Messenger* v. *City of Buffalo,* 21 N. Y. 196; *Mahon* v. *Mayor, etc.,* 10 Misc. Rep. 664; *Brady* v. *Mayor, etc.,* 132 N. Y. 427; *Mulholland* v. *Mayor, etc.,* 113 N. Y. 631; *Dannat* v. *Fuller,* 120 N. Y. 558; *Newell* v. *Mayor,* 61 Hun, 357.) The suggestion of the learned trial judge that this pumping to the overflow basin was a new contract, and in violation of the Consolidation Act, prohibiting contracts in excess of $1,000, except by public letting, is not applicable. (*Abells* v. *City of Syracuse,* 7 App. Div. 501.)

*John Whalen, Corporation Counsel* (*Theodore Connoly,* of counsel), for respondent. The dismissal of the first cause of action for the amount claimed for extra work for pumping out the lake was proper, as said work was not extra work, but included in and required by contract. (L. 1882, ch. 410, § 64; *Bonesteel* v. *Mayor, etc.,* 22 N. Y. 162; *McDonald* v. *Mayor, etc.,* 68 N. Y. 23; *Del Genovese* v. *Mayor, etc.,* 23 J. & S. 397; *Palladino* v. *Mayor, etc.,* 56 Hun, 565; *M. F. S. Co.* v. *Mayor, etc.,* 13 App. Div. 231; *O'Brien* v. *Mayor, etc.,* 139 N. Y. 543.) The procuring of a certificate of the engineer is a condition precedent to the right of the plaintiff to sue for the additional work; and upon his failure to produce it he must show that it has been demanded and unreasonably refused. (*Byron* v. *Low,* 109 N. Y. 291; *Sweet* v. *Morrison,* 116 N. Y. 19; *O'Brien* v. *Mayor, etc.,* 139 N. Y. 543; *Beardsley* v. *Cook,* 143 N. Y. 143; *Weeks* v. *O'Brien,* 141 N. Y. 199; *Adams* v. *Mayor, etc.,* 4 Duer, 295; *Smith* v. *Briggs,* 3 Den. 73; *Butler* v. *Tucker,* 24 Wend. 447; *Van*

*Aiken* v. *Mayor, etc.*, 18 App. Div. 89.) Where a contract provides that the contractor shall be bound by the final certificate of the engineer in charge of the work, such certificate, in the absence of proof of corruption, bad faith or misconduct upon the part of the engineer, or unless a palpable mistake appears upon the face of the certificate, is conclusive. (*Smith* v. *Mayor, etc.*, 12 App. Div. 391; *Quinn* v. *Mayor, etc.*, 16 App. Div. 408; *M. & P. R. Co.* v. *March*, 114 U. S. 549; *Elliot* v. *M., K. & T. Ry. Co.*, 74 Fed. Rep. 707; *United States* v. *A. C. Co.*, 74 Fed. Rep. 145.)

BARTLETT, J. The plaintiff, on the 14th day of January, 1893, entered into a contract in writing with the city of New York to furnish and provide all the necessary materials and labor, and excavate, remove and dispose of all silt, sediment and other materials deposited in the bottom of "The Pond" near Fifty-ninth street and Fifth and Sixth avenues, and construct a concrete bottom over same. This contract was to be completed by June 1st, 1893.

The plaintiff seeks to recover in this action for extra work under the contract and for moneys alleged to be due him on account of improper measurements by the engineer of the material excavated. The extra work constitutes the first item, and the additional claim is set forth in two separate charges.

The learned Appellate Division held that the plaintiff had, by a general release given by him to the city on the 24th of September, 1894, released all claim except such as he might have, if any, for extra work not covered by the contract. We are of the same opinion, and shall consider this case only as to the claim for extra work.

The sheet of water known as "The Pond" is a small lake in Central Park, located near Fifty-ninth street, and covers an area of some six acres.

The pond had an outlet consisting of a circular gate twenty inches in diameter resting on the bottom, and connecting by pipe with one of the city sewers. There was also an overflow

basin about twenty-five feet from the gate and five or six feet higher, which also led to one of the city sewers.

The specifications embodied in the contract define what burdens the plaintiff assumed in the premises.

Subdivision 1 provides that plaintiff shall furnish " all labor and materials required for conducting the flow of water and draining off the water from the bottom during the prosecution of the work."

Subdivision 2 states that plaintiff shall furnish " all labor and materials required for conducting the flow of water through or across the area of the pond, or any portion thereof, and all pumping or bailing or other work required."

Subdivision 5 requires the plaintiff to provide " all labor and materials required for conducting the flow of water through or across the area of ' The Pond ' *to the outlet,* or for draining water from any portion of the area, and all pumping or bailing required for the proper prosecution of the work during its progress and until its completion."

Subdivision 33 reads as follows : " All loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or from encumbrances on the line of the work, or from any act or omission on the part of the contractor, or any person or agent employed by him, not authorized by this agreement, shall be sustained by said contractor."

In the blank form of proposals for estimates under which the plaintiff made his bid is this provision : " Bidders must satisfy themselves by personal examination of the location of the proposed work, and by such other means as they may prefer, as to the accuracy of the foregoing engineer's estimate, and shall not at any time after the submission of an estimate dispute or complain of such statement or estimate, nor assert that there was any misunderstanding in regard to the nature or amount of the work to be done."

The provisions we have quoted are those involved in the plaintiff's claim for extra work.

It was proved at the trial that the plaintiff made the personal examination of the location of the proposed work as required.

Shortly after the contract was executed the plaintiff requested the proper city authorities to draw off the water from the pond, and thereupon the circular gate, twenty inches in diameter, resting upon the bottom as already described, was opened and the water was drawn down to a depth of fourteen inches, when the outlet pipe ceased to work.

An examination disclosed that the pipe or sewer was very seriously obstructed, and, unless the same was cleared out, no further water could be drawn from the pond.

The engineer insisted that it was the duty of the plaintiff under his contract to pump out the water remaining in the pond into the overflow pipe or otherwise to dispose of it.

The plaintiff stated in substance that he did not consider that the contract required him to remove from the pond any portion of the water that would naturally flow through the outlet pipe if it were in order; that his duty was merely to do such pumping as was necessary to keep the bottom of the pond clear of water while the work of laying the concrete was in progress and to conduct it across the area of the pond to the outlet.

The engineer still insisting that the plaintiff must remove the water from the pond, the latter erected his pumps and proceeded to do the work of pumping, claiming, however, that it was no part of his contract and the city must pay him for it as extra work.

The question that lies at the threshold of this case is: Did the city owe the duty to the plaintiff of having the outlet pipe of this pond in working order?

The contention of the learned corporation counsel is that by the terms of this contract the plaintiff was bound by his personal inspection of the location of the proposed work and by subdivisions 1, 2 and 5 of the specifications already quoted to remove all the water in the pond if necessary. In other words, that if the outlet pipe had been so obstructed as not to

66

draw any water from the pond, it was, nevertheless, incumbent upon the plaintiff to have removed it in some manner.

We do not think this is a reasonable construction of the contract. It was, of course, impossible when the plaintiff went upon the ground to examine the proposed work to see more than the outlet gate and the size thereof; whether the sewer lying beyond was in a condition to carry off the water was something that he could not ascertain by a mere inspection of the premises.

A fair construction of the contract on this point authorized the contractor to assume that the pond could be drained of water in a general sense. There would, of course, be inequalities and irregularities on the bottom, where more or less water would remain, and which the contractor was bound to pump out and keep clear during the progress of laying the concrete work.

A careful reading of those portions of the specifications above quoted shows that the plaintiff was to drain off " all water from the bottom during the prosecution of the work ; " to furnish " all labor and materials required for conducting the flow of water through or across the area of the pond, or any portion thereof, and all pumping or bailing or other work required ; " and also " all labor and materials required for conducting the flow of water through or across the area of the pond *to the outlet*, or for draining water from any portion of the area, and all pumping or bailing required for the proper prosecution of the work during its progress and until its completion." These quotations disclose the language of limitation, and show the contract did not contemplate the contractor pumping out the water of the lake in a general sense.

It seems to us a strained and unjust construction that would require the plaintiff under these provisions to remove, if necessary, the entire body of water from the pond. This latter work is a subject upon which the minds of the parties could not have met, and the plaintiff in his estimates did not consider that he was called upon to pump out this great body of water lying upon an area of six acres. It was proper for plaintiff to

assume that the water of the lake could be discharged into the sewer through the outlet the city had constructed for that purpose.

This construction of the contract falls within a familiar rule: " The meaning of a contract is to be gathered from a consideration of all its provisions, and the inferences naturally derivable therefrom, as to the intent and object of the parties in making it, and the result which they intended to accomplish by its performance." (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 211; *Booth* v. *Cleveland Mill Co.*, 74 N. Y. 15–21.)

It has been frequently held that if a municipal corporation, by its own act, causes the work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable to him for the increased cost or extra work. (*Messenger* v. *City of Buffalo*, 21 N. Y. 196; *Mulholland* v. *Mayor, etc., of New York*, 113 N. Y. 631.)

The additional point is taken on behalf of the city that even if the contract should be construed as we have indicated, nevertheless the plaintiff has waived all claim for extra work by reason of subdivision thirty-three of the specifications which provides: " All loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same or from the action of the elements, or from encumbrances on the line of the work, or from any act or omission on the part of the contractor, or any person or agent employed by him, not authorized by this agreement, shall be sustained by said contractor."

When this provision is reasonably construed it does not operate against the plaintiff as contended. It must be held to apply to the work to be done, and the unforeseen obstructions or difficulties which may be encountered under the agreement.

The unforeseen obstruction that was encountered and that subjected this plaintiff to a large amount of extra work, was

entirely outside of the contract and stands unaffected by this provision.

The judgment appealed from, and that of the Trial Term, should be reversed and a new trial ordered as to the claim for extra work only, with costs in all the courts to abide the event.

All concur, except GRAY and O'BRIEN, JJ., dissenting.

Judgment reversed, etc.