## MONTROSE CONTRACTING CO., Inc., v. COUNTY OF WESTCHESTER.

### No. 115.

Circuit Court of Appeals, Second Circuit.
Jan. 6, 1936.

Wait, Wilson & Newton, of New York City (Frederick W. Newton and Howard G. Wilson, both of New York City, of counsel), for appellant.

William A. Davidson, of White Plains, N. Y. (Francis J. Morgan, of White Plains, N. Y., of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Below, a judgment was entered on the first cause of action for a balance of the contract price due appellant, and no appeal is taken therefrom. The second cause of action is for damages for breach of contract, said to have resulted by reason of erroneous representations contained in a contract, plans, and specifications for tunnel work necessary in constructing a sewer.

The parties contracted for the construction of a 78-inch sewer in a tunnel approximately 2 miles long, at an average depth of about 40 feet, beneath the streets of the city of Yonkers, Westchester county. The appellant contends that appellee represented that the tunnel work was a free air job with the exception of about 600 feet, and that these representations were erroneous, because in prosecuting the work it became necessary to construct 6,142 feet of a total distance of 8,553 feet of the tunnel by the use of compressed air. The cost to the contractor was $1,434,767, without any charges for supervision, overhead, or profit, and the contractor has been paid for the work $987,465.93, including the sum for which he has, in this action, recovered judgment on the first cause of action. The excess cost to the contractor by reason of the use of compressed air was $497,521.25. In directing a verdict against the appellant, the District Court decided that there was no warranty that compressed air would not be required to an extent greater than 600 feet.

The specifications and plans were in terms embodied in the contract. These set forth various features of the construction work required of the contractor which could be used only in a free air tunnel. Where the ground through which a tunnel is driven contains a moderate amount of water, this can be carried off by means of underdrains. Such underdrains were specified in the contract in detail. They were to be surrounded by broken stone. Such underdrains were entirely unsuited for use in a tunnel being constructed by compressed air methods. Where the ground is full of water or where the soil is of a type that shifts with the water in it, tunneling is accomplished by keeping an air pressure in the tunnel sufficient to prevent the water from coming in. If the underdrains specified were used, they would allow the air to leak out and would cause a collapse. There was evidence, by men experienced in this kind of work, that a sewer tunnel with an underdrain could not have been built in compressed air. Broken stone surrounding underdrains could not be used in compressed air tunnel work, as the air would escape through the broken stone.

Alignment holes were also specified in detail. These were to be drilled from the surface to the tunnel for the purpose of checking direction. They are used in free air tunneling but never in compressed air, since they provide an opening through which pressure would be lost. Similar indications that the tunnel was substantially a free air job are to be drawn from the specifications requiring ventilation, concreting, and care of water. In all these, methods suitable for a free air job and impossible of use in a compressed air job were specified in the contract. The stipulation that these free air methods be used was a representation that the job was free air tunnel construction work. Where one party furnishes specifications and plans for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purpose in view. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Penn Bridge Co. v. City of New Orleans, 222 F. 737 (C.C.A.5); MacKnight Flintic Stone Co. v. Mayor of New York, 160 N.Y. 72, 54 N.E. 661. The specifications outlined above would be adequate only where the tunnel was to be built in free air. Thus the appellee, setting out these specifications to be followed,

impliedly warranted the tunnel was substantially a free air job. Whether the builder was damaged in proceeding with the work in reliance on this implied warranty, as in the cases supra, or whether he was damaged in relying on the warranty in making his bid, as he did here, he may recover. Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933; Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898.

The appellee relies on two provisions reading:

"That where material other than solid rock is encountered, containing loose sand or mud, which shifts with the water contained in it, and the Contractor chooses to use compressed air to pass through it; in order to partly relieve him of the additional cost of preventing and caring for the incoming water and material or restraining it, an allowance will be made throughout the stretch where the compressed air is actually used under the above conditions of $30.00 per foot and for not more than six hundred (600) feet of length, where actually used, regardless of whether more be used or not."

"Maximum partial compensation for labor, plant and materials under compressed air when and if actually used as specified but not in excess of 600 feet in length of tunnel and Thirty and no/100 dollars ($30.00) per foot."

These provisions of the contract cannot be given the effect of completely negating the representations in the plans that the tunnel was primarily a free air tunnel. They might have been effective to limit appellee's liability if the work had required somewhat more than 600 feet of compressed air, but, in point of fact, there was 6,142 feet to be so built. These causes cover a variation, not a transformation. Salt Lake City v. Smith, 104 F. 457 (C.C. A.8); Horgan v. Mayor of New York, 160 N.Y. 516, 55 N.E. 204.

■ As pointed out in the Salt Lake City Case, in interpreting such clauses, the great desideratum is to ascertain the terms upon which the minds of the parties met and the sense in which they were used when the parties made the agreement. There a stipulation in the contract provided that the contractor or its engineers could make any necessary or desirable alteration in the work required and the contractor would be paid therefor at the contract rate. The effect of this broad clause was held to be limited by the subject-matter of the contract and the intention of the parties when it was made to such modifications of the work as were then contemplated. It did not cover a radical change in the nature or cost of the work or materials required. For all work and materials required by such uncontemplated changes in the plans, the contractor recovered the reasonable value, notwithstanding the agreement. And in sustaining a recovery for the contractor the court said, at page 464 of 104 F.: "It is conceded that the literal terms of the contract, when divorced from reason, from the object contemplated by the parties, from their situation, and from their intention, are so general and unlimited as to permit this to be done. But it is as clear as the sun at noon in a cloudless sky that the minds of these parties never met on such a proposition, and that they never contemplated or intended to make any such contract."

What was said by Judge Sanborn is equally applicable here.

The appellee says that the appellant contractor knew that compressed air would be necessary to a considerable extent on this work, for it claims that the borings inspected by the appellant's engineer were marked "water level" at varying depths above the tunnel. The proof of the meaning of such marking is insufficient. If the mark means, as contended, that the ground below is saturated with water, that should have been more definitely established at the trial. The engineer would be held accountable for knowledge of the meaning of a trade term. If it is true that the borings indicated water-soaked material, the appellant would not have the right to rely on the county's representation to the contrary. But on this record the jury could find that the contractor had the right to rely on the appellee's representation contained in the specifications. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; United Construction Co. v. Town of Haverhill, N. H., 9 F.(2d) 538 (C.C.A.2).

The appellant may recover for the damages it sustained, since the representations upon which it relied in making its bid proved untrue, and for this breach of warranty the appellee was responsible.

Judgment reversed.