TURNER CONSTRUCTION COMPANY, Respondent, Appellant, v. THE STATE OF NEW YORK, Appellant, Respondent. (Claim No. 22419.) — Cross-appeals from a judgment of the Court of Claims in favor of claimant for $197,831.22 damages, with interest thereon from May 18, 1932, amounting in all to $255,136.30, entered in the office of the clerk of the Court of Claims on March 16, 1937. The State appeals from the entire judgment and the claimant appeals from so much of said judgment as disallowed certain items of the claim and awarded inadequate damages on other items. The claim arises out of a contract entered into on March 20, 1930, between the claimant and the State for the construction of twenty-two buildings at Pilgrim State Hospital for the sum of $6,384,200. The total amount claimed was $349,758.65 and consisted of the following items: 1. Damages due to being required to cut stretchers in the body of brick work on the exterior walls of nine buildings. 2. Damages due to being required to use special jointing tools and to form specifically shaped joints in all exterior brick work. 3. Damage on account of wrongful rejection of terra cotta tile. 4. Damages on account of wrongfully being required to furnish temporary heat during the winter of 1930–1931. 5. Damages on account of temporary heat and overhead expenses due to prolonging claimant's work from January 15, 1931, to May, 1932. 6. Certain miscellaneous items of damage and wrongful deductions from contract price. The Court of Claims has found that the State's inspectors were wholly unreasonable in requiring the contractor to cut a large number of brick in the body of the brick work on the exterior walls of nine buildings. The court below was fully justified in this finding. The requirement of the State's inspectors was not authorized by the contract or specifications and was arbitrary. It made it necessary for the contractor to set up special cutting benches around the walls of these buildings and to have bricklayers cut a large number of these brick when substantially the same result and a result wholly within the contract could have been accomplished by following the method suggested by the contractor of using six-inch stretchers which could be obtained commercially. The claimant proved that its actual damages as the result of this breach of the contract by the State amounted to $158,143.19 and there is no proof in the record to contradict this figure. The court below should have allowed claimant the damages at this figure instead of at $100,000. The State's inspectors also wrongfully required the use of a special jointer and the forming of special joints on the exterior brick work. These special jointers had to be specially fabricated and were not of the kind usually used in the trade. The specifications called for a concave joint. The special jointer, the use of which was required by the State, produced a V-shaped joint with a rounded point and not a concave point. Here again the inspectors required

* See Laws of 1930, chap. 595.— [REP.

something outside of the contract and quite unreasonable. After it had approved of the terra cotta samples submitted and $33,000 worth of such terra cotta was paid for, the State refused to allow its use and required the contractor to furnish another make of terra cotta. By first approving the sample and then paying for the material delivered on the site of the work, the State placed itself in a position where it might not later be heard to complain that the finished product made up of the approved sample was unsatisfactory. The contract provided that " in the event of noncompletion of the plastering or other interior finish, temporary heat shall be provided from October 15th until May 1st." The contractor contends that since it had not begun the plastering or the installation of other interior finish by October fifteenth, it was not required to furnish any temporary heat for that winter. This contention is not borne out by the contract which refers only to the non-completion of the plastering or other interior finish and says nothing about their non-commencement. This item was, therefore, properly disallowed. Claimant was allowed $20,000 because it was compelled to furnish temporary heat during the latter part of the winter of 1931–1932 while the State delayed its final inspection. The record amply sustains claimant's contention that the State did unreasonably delay this final inspection and occupied weeks making this inspection when it should have been completed in a much shorter time. The remaining items which relate more to details were properly disposed of by the Court of Claims. Judgment modified by increasing the same from $197,831.22 damages to $255,974.27, with interest thereon from May 18, 1932, to date, and as so modified affirmed, with costs to the claimant against the State. The court reverses finding of fact number 5 in the decision and makes findings of fact numbers 29 and 30 contained in the claimant's request to find. Crapser, Bliss and Heffernan, JJ., concur. Rhodes, J.: I concur except as to item VII, damages caused to the contractor for moving materials and temporary buildings due to the operation of other contractors (finding 52). The contract, article 21, section 84, provides: " The State reserves the right to let other contracts in connection with this work. The contractor shall offer other contractors reasonable opportunity for the introduction and storage of their materials and the execution of their work and shall properly connect and coordinate his work with theirs." As to this item I dissent and vote that it be disallowed. Hill, P. J., dissents and votes to affirm the judgment of the Court of Claims.