348 Ill. App. 89 (1952)
108 N.E.2d 39
McKay Engineering and Construction Company, Appellant,
v.
The Sanitary District of Chicago, Appellee.
Gen. No. 45,619.
Illinois Appellate Court.
Opinion filed September 23, 1952.
Rehearing denied October 7, 1952.
Released for publication October 14, 1952.
*90 JOHN J. DOWDLE, of Chicago, for appellant; EUGENE P. KEALY, and WILLARD C. WALTERS, both of Chicago, of counsel.
RUSSELL W. ROOT, of Chicago, for appellee; LOUIS I. FISHER, and JOHN L. EAST, JR., both of Chicago, of counsel.
MR. JUSTICE TUOHY delivered the opinion of the court.
Plaintiff sued defendant for damages claimed for extra work in the construction of a sewer. The case was tried before the court without a jury resulting in finding and judgment for the defendant.
Plaintiff contends (1) that it incurred costs and expenses beyond those provided for or anticipated in its written contract as a result of following plans and specifications furnished plaintiff by defendant which were insufficient and inadequate for the purposes for which they were intended; (2) that plaintiff was required under the specifications to pay to its employees a specific schedule of wages, but that after the work was started defendant created conditions which prevented plaintiff's compliance and required plaintiff to pay a higher wage scale, and that this higher wage scale was approved by defendant and defendant thereby became liable for the payment of the difference between the contract scale and the wages actually paid. The total amount claimed is $130,701.81.
The only evidence in the case was introduced by the plaintiff. The contract here under consideration was entered into on December 12, 1935, and called for the construction of approximately 15,350 lineal feet of *91 concrete sewer in an area of Cook county which parallels the Des Plaines River. The plans and specifications were prepared and furnished by the defendant. The work was performed under the direction and supervision of the chief engineer of the defendant and the resident engineer designated by him. Work on the project commenced the last week of December, 1935, and was completed in April of 1937. During the course of construction, in September of 1936, the Des Plaines River overflowed its banks and flooded the sewer tunnel then under construction. The damages arising from this flooding condition, for work, excavation and materials, amount to $73,906.91.
The proof shows that flood waters entered the tunnel through several manholes located between station 43 plus 79 and station 107 plus 82, a distance which though not testified to in feet, included several manholes. There is also evidence in the record that the Sanitary District kept records of the flood stage of the Des Plaines River and that on several previous occasions, going back to the year of 1881, the river had reached a flood stage comparable in proportions to that of 1936.
Plaintiff's position is that by furnishing plans and specifications which plaintiff was required to follow defendant impliedly warranted that no damage would occur in the sewer by virtue of flood waters entering the manholes. Plaintiff assumed its obligations under the contract with full knowledge of all the provisions of the contract, one of which is as follows:
"Examination of Site.
"(6) The Contractor is required to examine the site of the work and adjacent premises, and the various means of approach to the site, and to make all necessary investigations in order to inform himself thoroughly as to the character and magnitude of all work involved in the complete execution of this contract; *92 also as to the facilities of delivering, handling and installing the construction plant and other equipment and the conditions and the difficulties that will be encountered in the performance of the work specified herein. No plea of ignorance of conditions that exist or that may hereafter exist, or of difficulties that will be encountered in the execution of the work hereunder, as a result of failure to make necessary examinations and investigations, will be accepted as a sufficient excuse for any failure or omission on the part of the contractor to fulfill in every detail all the requirements of this contract, or will be accepted as a basis for any claim whatsoever for extra compensation or for an extension of time."
From his inspection the contractor was charged with knowledge that this sewer tunnel paralleled the adjacent river. From this proximity of the construction work to the river it was obvious that in case of floods damage to the work was probable. There was no undertaking, express or implied, on the part of the defendant that the plans submitted would during all periods of construction permit the contractor to carry out the work at such an altitude as to be above any possibility of water seepage. It was up to the contractor to guard against a hazard of which it should have been aware. That it was aware of the possibility of flooding is indicated from the fact on one occasion, six months before the high water, it sought permission to elevate a manhole to a higher level. This request, which was made in writing, was granted. Plaintiff contends that it made another oral request upon which no action was taken, but at any rate it does appear that at least six months before the injury occurred plaintiff was aware of the possibility of flooding and failed to adopt procedures sufficient to forestall the anticipated injury. The fact that the defendant kept records showing varying heights attained by flood waters in the river over *93 a number of years charged it with no special knowledge which it was bound to divulge, as the fact and extent of prior flooding was a condition easily ascertained and which should have been ascertained by the contractor in the exercise of ordinary prudence.
[1] In support of its theory of implied warranty plaintiff cites a number of cases of which Montrose Contracting Co. v. County of Westchester, 80 F.2d 841; United States v. Spearin, 248 U.S. 132; Hollerbach v. United States, 233 U.S. 165; Christie v. United States, 237 U.S. 234; Penn Bridge Co. v. City of New Orleans, 222 Fed. 737; United States v. Atlantic Dredging Co., 253 U.S. 1; and United States v. Smith, 256 U.S. 11, are typical. These cases are not in point for the reason that in every instance the injury was occasioned by either a positive misrepresentation, a failure to disclose material facts under circumstances legally requiring disclosure, or defective plans which circumstances compelled the contractor to follow. In the instant case there is no charge of any misrepresentation or any failure to disclose any material facts which were peculiarly within the knowledge of the defendant and of which the plaintiff did not or might not be expected to have knowledge. Neither is there any proof of defective plans. It is true that the plans submitted and followed by the contractor resulted in the manhole covers being below the level of the flood waters, but from this single circumstance no presumption arises that the plans were defective or that any other or better plan consistent with the practical construction of the sewer could have been adopted. On the contrary, a fair construction of the contract under all the circumstances here present is that the submergence of the manholes during certain periods of construction might reasonably have been anticipated, and the obligation to guard against damage from such cause was on the contractor.
*94 The second portion of plaintiff's argument has to do with the contention that defendant created conditions which necessitated plaintiff's paying a higher wage scale than that provided for in the contract and that the higher wage scale was approved by the defendant. Particularly, plaintiff offered to prove that the contract in question was first advertised for bids on September 28, 1935; that plaintiff, bidding in view of a recently adopted wage scale, submitted a figure of $690,050; that this bid, together with all others was rejected and plaintiff was orally advised by defendant's chief engineer to submit a second bid based on a lower wage scale which had previously been in effect; that plaintiff submitted such a bid, which was $106,000 less than the rejected bid, and was awarded the contract; that after plaintiff's bid had been received and accepted and the contract was entered into and partially performed, the defendant made other contracts involving similar work and similar types of employees with other contractors than the plaintiff, where the successful bidder could pay his employees any amount not less than that shown in the contract to employees on such contracts; that thereafter, by virtue of the differential in the wage scale, it was impossible to get employees at the contract price; that the difference between what was set up by the contract and what was actually paid was the amount of $48,188.01.
[2] This offer of proof was rejected by the court. We are of the opinion that no error was committed by the court by this ruling. The contract so far as the wage scale is concerned is clear and unambiguous. All the negotiations and conversations leading up to its execution were merged in the formally executed contract and oral testimony should not be heard to alter its terms, which would clearly be the effect of the proferred testimony. The fact that the Sanitary District may have paid a higher wage scale to competitors *95 of plaintiff is no reason to relieve plaintiff from its clear and unambiguous contractual undertaking.
[3] Plaintiff further contends that the change in the wage scale was later approved. This conclusion is not borne out by the evidence. As a matter of fact a request by the contractor that the Sanitary District agree to the payment of a higher wage scale was refused in writing. While it is true that payrolls showing the increased scale over the contract price which plaintiff paid its employees were submitted regularly to defendant and were approved, the evidence establishes that there was no undertaking on the part of the defendant to defray the expense of this increase. The purpose of submitting the payrolls and approving them was to ascertain, as required by the Public Works Administration (which was defraying a portion of the cost of the improvement), whether or not the contractor was meeting the minimum wage requirements of the contract. The only interest of the P.W.A. in the matter was to see that the employees were paid at least the amount provided for by the contract, but it had no objection and would not withhold approval because the contractor was paying more than the contract schedule.
Plaintiff argues further that, having accepted the benefits of the extra work performed by plaintiff, defendant became liable for the payment thereof under the rule announced in Great Lakes Dredge & Dock Co. v. City of Chicago, 353 Ill. 614. In that case, after the contractor had started work straightening the Chicago River, the United States Government opened the sluice gates between Lake Superior and Lake Michigan, thereby increasing the flow of water from the former into the latter and causing what the Supreme Court described as an "unprecedented rise in the level of the river." There was no way that the contractor could have anticipated this condition, and under the *96 terms of its contract it faced severe penalties for failure to complete the work within the time provided. The contractor sought permission to adopt procedures extraneous to the contract provisions to meet the unexpected situation, and relied upon the consent of an alleged representative of the City Council, which was not in session. Later the City Council repudiated this consent. The contractor sued for the extra expense and the Supreme Court affirmed a recovery. We think this case plainly distinguishable from the one at bar, where the abnormal conditions which arose might reasonably have been foreseen and where even after avoidable danger threatened nothing was done by the contractor to prevent damage.
For the foregoing reasons the judgment order of the superior court of Cook county is affirmed.
Judgment order affirmed.
ROBSON, P.J. and SCHWARTZ, J., concur.