◼ ROSOFF BROS., INC., et al., Appellants-Respondents, v. STATE OF NEW YORK, Respondent-Appellant. (Claim No. 49297.) — Cross appeals from a judgment in favor of the State, entered October 6, 1970, upon a decision of the Court of Claims. Claimants also appeal from an order entered November 16, 1970, which denied their motion to set aside the court's decision with respect to the third cause of action of the claim. Claimants, a joint venture, and the

State entered into a contract on July 26, 1965, whereby claimants agreed to perform the construction work involved in the excavation, pile driving and concrete pouring for the foundation of a 44-story office tower building in the Albany South Mall project. During the course of performance of the contract certain differences arose between the parties over its interpretation, resulting in a claim, consisting of five causes of action, being filed against the State in 1968. This appeal involves only two of the five causes of action decided by the Court of Claims, claimants appealing from the dismissal of their third cause of action, which sought $177,000 in damages resulting from the State's alleged arbitrary refusal to permit them to proceed with their work plan for the pouring of a concrete work mat and the implantation of 1,200 piles, and the State appealing from an award of $9,127, based on the second cause of action, which pertained to additional expenditures incurred by claimants as a result of flooding which occurred when they struck an underground water pipe during excavation. The construction work encompassed by the contract consisted of four major categories of work: (1) the excavation of the foundation area; (2) the installation of a four inch thick, nonstructural concrete work mat over the excavated area; (3) the implantation of approximately 1,200 piles; and (4) the pouring of a concrete pile cap over the piles. The evidence that claimants presented shows that they intended to lay the mat immediately after excavating the area involved, working in a staggered fashion, excavating a part, laying the mat, excavating a contiguous part, and continuing the mat. Claimants then planned to drive their pile driving rig onto the work mat and drive the piles through the mat and into the ground to the required depth. After they had done an initial excavation and were preparing to lay the first section of the work mat, claimants were immediately ordered by the State's resident engineer to cease operations. Claimants were informed by the State that the sequence of operations they envisioned was not approvd by the State, and the procedure the State called for was for claimants to drive the piles first and then lay the work mat. Claimants then proceeded to lay a temporary gravel bed on top of the excavated area, and they placed wooden timbers on the gravel bed to support the pile driving equipment. The damages that were claimed in the third cause of action, stipulated to as being approximately $100,000, resulted from the time lost by the pile driving crews in moving the timber platforms and the cost of the platform and gravel bed. A careful perusal of the terms of the contract indicates that it was erroneous to dismiss claimants' third cause of action. The court found that the State reserved the right, under article 28, paragraph 122, of the contract to direct the sequence of operations, but that section only gives the State the right to direct the initiation or discontinuance of work operations, not the right to direct the sequence of work. Furthermore, while article 601F, paragraph 21, which appears in the contract under " Section 6F — Piling ", allows the State architect to control the method and sequence of pile driving operations, this section has no application to the laying of the work mat, the specifications for which appear in " Article 204F — Excavation, Backfilling and Disposal ", which article is part of " Section 2F — Excavation Work ". The contract does contain some general provisions which give the State the power to control the sequence of construction, but these provisions are modified by their own language, which require claimants to submit a schedule of operations for *approval* by the State, and also by the more specific provisions of the contract relating specifically to the excavation and the laying of the work mat. These latter provisions, found in article 204F, paragraphs 46, 49, and 51, clearly required claimants to proceed in the manner which they attempted, by requiring the mat to be poured on the subgrade during the same

working day as the excavation and, in freezing weather, "*immediately* after the excavation has been completed". Therefore, while the State had the general power to approve the sequence of operations, the contract specifically required claimants to proceed in the manner in which they intended. A specific contract provision may not be abrogated in favor of a general catchall clause (*Higgins & Sons* v. *State of New York*, 20 N Y 2d 425). It should also be noted that the claimants received at least the State's tacit approval of their intended work schedule, which was submitted to the State on July 2, 1965, prior to the signing of the contract, at a meeting requested by the State. The State's assistant resident engineer, who was present at the meeting, remembered that the progress schedule was distributed but did not recall if claimants clearly stated that they intended to pour the work mat prior to driving the piles. Whether or not the schedule was discussed in detail is of little importance in view of the fact that it so clearly shows claimants' intent to pour the mat prior to driving the piles. The State had notice of claimants' intent and raised no objection thereto. Given the fact that this meeting was for the specific purpose of ascertaining claimants' qualifications prior to the final contract award, and the ability to meet a proposed schedule being such an obvious element in determining claimants' qualifications, the failure of the State to object to such a clear progress schedule and the subsequent awarding of the contract to claimants can only be viewed as an approval of the proposed schedule. Finally, there is no mention of the gravel bed method in the specific sections of the contract relating to the work mat and the pile driving. Even where the architect, as here, has some general power to control the performance of the work, " The law is that so long as a contractor produces work which satisfies the specifications, he can, in the interest of economy, choose his own methods. This is not only law but common sense; for when a contractor bids, his estimates, which influence the bid, are necessarily based on his own methods of work so long as those methods are not controlled by the specifications. (*Horgan* v. *Mayor*, 160 N. Y. 516.) " (*Meads & Co.* v. *City of New York*, 191 App. Div. 365.) Claimants' proposed method, even if it did not include repouring the work mat after driving the piles, would have produced a result wholly within the contract and conforming to the specifications, and consequently, it was error to dismiss their third cause of action (cf. *Turner Constr. Co.* v. *State of New York*, 253 App. Div. 784, mod. 279 N. Y. 243). As to the State's cross-appeal, the contract clearly provided that, should any active water line be encountered in the excavation, the State would bear the expense of relocation. The contract also stated that all service lines in the construction area were believed to be inactive. The court's decision awarding claimants damages incurred when they struck an obviously active water line was clearly correct, especially in view of a letter from the Superintendent of Public Works, admitted into evidence, which clearly stated that claimants were entitled to be reimbursed for costs incurred in this matter. Judgment modified, on the law and the facts, by reversing the second decretal paragraph insofar as it dismisses the third cause of action and remanding to the Court of Claims for appropriate award, and, as so modified, affirmed, without costs. Appeal from order entered November 16, 1970, dismissed, without costs. Greenblott, J. P., Cooke, Simons and Kane, JJ., concur. Reynolds, J., dissents and votes to affirm the judgment of the Court of Claims.